Copyright Case: 1-2617427191 Drug Free Gang Free
(LA2012) Drug Free Gang Free in Communities

Copyright Effective July 14 2014

www.copyright.gov

# STATEMENT OF CLAIM AND DAMAGES

§    501    Copyright Infringement and Remedies

(a) Copyright Law of the United States 159
(b) (f)(1)  With respect to any secondary transmission that is made by a satellitecarrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection

Attached 1 is a copy of our copyrighted work.

Attached 2 is a copy of the defendants duplication of our copyright\\ted work.

Attachment 3 is a Police Report of Theft of the copyrighted material potentially leading to the infringement

Attachment 4 shows evidence of financial damage from the infringement.

28 U.S.C. § 1915  Failing to state a claim upon which relief can be granted.

28 U.S.C. § 636 (b)(1)(B) **(B)**  a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial [1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement

In this case, we believe that the defendant copyright infringement is erroneous and contrary to law. Please see the highlighted sections under § 104a Subject Matter and Scope of Copyright. The violation is that GHN is a duplicate from copyrighted work. They are for profit gaining off of a duplication of copyrighted work for a period of 3 years under Federal Copyright Law. Our business has lost money in this infringement and it could put our charity out of business. Attached is evidence of financial loss with the copyrighted material being infringed upon by the defendant.


Id.; Thomas v. Arn 474 U.S. 140, 149 – 50 (1985)

(149)we need not decide whether the Act mandates a waiver of appellate review absent objections. We hold only that it does not forbid such a rule

(150)does petitioner point to anything in the legislative history of the 1976 amendments mandating review under some lesser standard. We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed. Petitioner also argues that, under the Act, the obligatory filing of objections extends only to findings of fact.

In this case, we believe the infringement is a federal violation of copyright law under the copyright case Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities        §501    Copyright Infringement and Remedies  under the Copyright Law of the United States 159.   In section § 106 · Exclusive rights in copyrighted works38 there is evidence for that.

In the attachments with this case, there is a copy of the defendents webpage or infringement on a US copyright, and an attachment of the original copyrighted work itself. We believe it was based on a theft, and have an attached police report with crime incidents to support what was behind the infringement itself potentially.

§ 106 · Exclusive rights in copyrighted works38

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

§        104a     Subject Matter and Scope of Copyright

Copyright Law of the United States 17

(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work;

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is a derivative work of our copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

In this case we believe Global Homeboy Network is distributing at financial gain copyrighted work to the public from our copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is a derivative work of our copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly;

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is a derivative work of our copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

§ 106a · Rights of certain authors to attribution and integrity39

(a) Rights of Attribution and Integrity.—Subject to        section 107      and      independent of the exclusive rights provided in section 106, the author of a work of visual   art— (1)        shall      have
the        right— (A) to claim authorship of that work, and (B)      to      preventthe      use
of      his      or      her      name     as      the      author   of      any      work      of
visual art which he or she did not create; (2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is preventing the use of the rightful owner of our copyrighted webpage www.drugfreegangfree.org the use of the copyright holders name as the author of the work that is a Federal Infringement for the Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

(3)      subject to      the      limitations      set      forth in      section 113(d), shall      have
the        right— (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is a modification of the work of our copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

(B)      to      preventany      destruction      of      a      work   of      recognized      stature, and      any      intentional or grossly negligent destruction of that work is a violation of that right.

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) has in 3 years of active infringement of a federal copyright: Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities that there financial damage that could hinder the reputation of the copyrighted material.

§ 107 · Limitations on exclusive rights: Fair use40

Notwithstanding the provisions of sections 106 and 106A, the fair use§ 107 · Limitations on exclusive rights: Fair use40

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be         considered      shall     include— (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

121 · Limitations on exclusive rights:  Reproduction for blind or other people with disabilities64

(a) Notwithstanding the provisions of section 106, it is not an infringement of copyright for an authorized entity to reproduce or to distribute copies or phonorecords of a previously published, nondramatic literary work if such copies or phonorecords are reproduced or distributed in specialized formats exclusively for use by blind or other persons with disabilities. (b)(1)       Copies   or         phonorecords    to        which  this     section applies shall— (A) not be reproduced or distributed in a format other than a specialized format exclusively for use by blind or other persons with disabilities; (B) bear      a       notice that    any     further reproduction   or       distribution      in       a       format other than a specialized format is an infringement;

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is a derivative work of our copyrighted webpage www.drugfreegangfree.org that is tailored for individuals with disabilities or who may be blind in  Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities.   The reproduction of our ADA tailored material, is not a specialized format, so therefore is considered an infringement.

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is an infringement that has caused financial damages for Federal copyrighted material, to the point that the copyrighted agency's reputation is damaged by the infringement.  The infringement could put plaintif out of business due to financial damages from the infringement.  The infringed material, does not impact ADA equipment of any kind.  It is an infringement of VA (webpage content)

copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

and (C) include a copyright notice identifying the copyright owner and the date of the original publication.

Copyright Owner:          Beth Ford

                   Direct Establishments

Date of Original Publication: 7/2014.

(d)    For purposes of this section, the term— (1) "authorized entity" means a nonprofit organization or a governmental agency that has a primary mission to provide specialized services relating to training, education, or adaptive reading or information access needs of blind or other persons with disabilities; (2) "blind or other persons with disabilities" means individuals who are eligible or who may qualify in accordance with the Act entitled "An Act to provide books for the adult blind", approved March 3, 1931 (2 U.S.C. 135a; 46 Stat. 1487) to receive books and other publications produced in specialized formats;

In this case we believe Global Homeboy Network webpage (www.homeboyindustries.org/GHN) is an infringement that has caused financial damages for Federal copyrighted material, to the point that the copyrighted agency's reputation is damaged by the infringement. The infringement could put plaintif out of business due to financial damages from the infringement. The infringed material, does not impact ADA equipment of any kind. It is an infringement of VA (webpage content)

copyrighted webpage www.drugfreegangfree.org Copyright Case: 1-2617427191 Drug Free Gang Free (LA2012) Drug Free Gang Free in Communities

- The plaintif in this lawsuit, Drug Free Gang Free, that
    1. We have a good faith belief that use of the copyrighted content described above, in the manner we have complained of, is not authorized by the copyright owner, its agent, or the law,
    2. The information in your notice is accurate, and
    3. We declare, under penalty of perjury, that you are the owner or authorized to act on behalf of the owner of an exclusive copyright that is allegedly infringed.

Signed _____     Title _____

Date 10-2-16

Enclosed Attachments:

1. Copy of copyrighted material
2. Copy of infringement
3. Statement of financial damages from infringement

Copyright Notice

1. The Copyright Symbol

2. The Year of the Creation

3. The Name of the Author

4. A Rights Statement

COPYRIGHTED CONTENT

Copyrighted

# HOMEPAGE

## Look out for our domain switch to
## www.drugfreegangfree.org

CAUTION:  Pitt Bulls are Dangerous!  Kids SHOULD NOT approach strange dogs or Pitt Bulls

Click here to add a content block.

Click to add text, images, and more.





Content copyright 2016. DrugFreeGangFree.org. All rights reserved.
Copyright 2012-2015. All rights reserved.

# ABOUT US

Drug Free Gang Free started in 2004 as a retail store. From 2004-2007 the extra proceeds from the retail profits were donated to those in need. After the owners finished the college, we started to hire felons and other people. Now our retail is mainly drug and violence safety products, that are all researched for effectiveness for drug and violence prevention by the Prevention Society. We established 501 status April 2012. Today the charity works with The Second Chance Offender ReEntry and in accordance to those guidelines.

Our charity offers our employees and people in our 135 location local communities classes biweekly in resumes, college planning, job interview skills, and job interview etiquette as needed to our employees as well as to the general public.

********** ANNOUNCEMENT: In regards to applications for part time work. The average wait for a job is 60 - 90 days at this time , but if you attend the local classes it could be as soon as 30 days.   Call about our local class locations!



Meet the Board!

Taylor Anthoney    Acting Chief Officer    Masters in non profit administration.    6 years experience in homeless services.
tAnthoney@drugfreegangfree.org

Dr Jones    ESI 1, Participating Department, Drug Prevention, Res Asst, 2 Predoctoral Trainees Supported 2015 for Drug Abuse Prevention Intervention Research, work with Court Services
mJones@drugfreegangfree.org    (14 day to 21 day response time)

Laura Jones    Financial Officer    (board terms ends 2017) Criminal Justice.    Previous experience in budgeting and financial management for 501c3.    Research Associate
donations@drugfreegangfree.org

2013 Audit and 2015 Review Available on Request!   Just email info@drugfreegangfree.org or give us a call!

Click to add text, images, and more.

---

DONATIONS

RUG FREE in the local communities!!

# Donations

If every $1 went to a person who needed it! Remember,  we are and have been accepting donations since 2/2012!

Thanks for inspiring drug free!

Script



Click to add text, images, and more.

# Contact Info

Drug Free Gang Free (501c3)
(new headquarters, call for contact info)
BATON ROUGE, LA

info@drugfreegangfree.org

Phone-1-888-533-6661
Fax- 1-866-396-1723

## Contact Information

In this area, you can enter text about your contact form. You may want to explain what happens after a visitor submits the form and include a contact phone number.

First Name:

Last Name:

Address Street 1:

Address Street 2:

City:

Zip Code:               (5 digits)

State:

Daytime Phone:

Evening Phone:

Email:

Comments:        Enter comments here!

Click to add text, images, and more.

# RESOURCES FOR ADDICTS

**People who are addicted to drugs or other things may not have the resources available to get the help they need. Here are some important resources, that if a person who has an addiction problem is in need, they can have access to.**



**This webpage has a search engine for any city in the US and drug treatment.**

http://findtreatment.samhsa.gov/

**This webpage offers group peer support for addiction and recovery**

http://www.na.org/

http://www.aa.org/

There is help out there if you have an addiction problem, it's important to find and ask for help if you need it. We have someone on call 9-5 EST Mon- Fri if you need help in that time, please call our office and our case manager can aid in getting you the help you need. We have resources available for the drug addiction, regular crisis as well as housing in most of the US. Have to ask if it's needed though. So don't be afraid to call or use a resource. We use the SAMSHA inpatient treatment locator for local drug treatment referrals via hotline. 888-533-6661 treatment referral ext

Risks of Marijuana Resources!

http://www.narconon.org/drug-information/dangers-of-marijuana.html

 

## FACTS ABOUT ADDICTION

Fact- 75% of the US prison population is incarcerated for a drug or drug related offense (such as drug induced or a bad drug deal etc...)

Fact- The US ONDCP Yearly Budget includes less then 1/3 of the whole budget on drug addiction treatment and treatment services

Fact-Between 2002 and 2007, teenage use of cigarettes declined from 13.0 to 9.8 percent. The past month alcohol use declined from 17.6 to 15.9 percent and past month illicit drug use declined from 11.5 percent to 9.5 percent.

**CHART- STATS ON TEENAGE DRUG USE**

**There is an increasing trend of a decease in drug experimentation in the teenagers now a**



**days.**

# OURCES FOR FAMILIES OF ADDICTS

Families of addicts may have to go through a lot themselves with the addiction. There are resources in the local community that are available for the families who may need support from that. Here are some of the resouces for the families in need

This webpage offers peer support to families that may be impacted by addiction. There are people out there who can relate and know resources for what they are dealing with.

*http://al-anon.alateen.org/home*

This webpage offers resources that are available about

It is always important for prevention for parents to talk to their kids about the harm of addiction or gang activity. This is important, because with the generation gap between what parents faced in the drug world, and what their kids face with the peer pressure, is large, so parents may not be aware of what their kids deal with. Since that is important, as a role model it is suggested to remember to talk to you're kids about the danger of that.



**REMEMBER!   IF A STRANGER APPROACHES YOU WITH DRUGS TELL YOU"RE PARENTS OR THE POLICE!**

## DRUG FACTS FOR FAMILIES OF ADDICTS TO BE AWARE OF

## How to tell if you're child is using the drug cocaine



- Warning Signs may include dilated pupils, increase in blood pressure, abnormally fast speech, sweats, hyperactive
- Dangers for teens and experimentation. Health concerns include major addiction, heart attack and stroke from the stimulant.

## How to tell if you're child is using the drug marijuana

- Warning Signs may include the red eyes, lazy behavior, short attention span, short term memory, slurred speech
- Dangers for teens and experimentation. Health concerns of long term cancer, lack of judgment, gateway drug into major addiction



## How to tell if you're child is using the drug opiates



- Warning Signs may include red eyes, lazy behavior, withdrawals from the drugs, marks on the arms from injections, loss of consciousness,
- Dangers for teens and experimentation. Health concerns can include death, very easy to over dose and the addicts heart can slow till death, abrasions, blown veins, clogged arteries, hearth attach and stroke

## How to tell if you're child is using alcohol

- Warning Signs may include slurred speech, disorientation, loss of balance, smell of alcohol, black outs
- Dangers for teens and experimentation. Health concerns can include death from detox after long term use, drinking and driving can result in death

 

## How to tell if you're child is using inhalants

- Warning Signs may include slurred speech, inhalant pimples (an inhalant addict will break out in small pimples), dilated pupils, increase in hearth rate and pulse, disorientation, confusion
- Dangers for teens and experimentation. Health concerns can include immediate death from the inhalant due to no oxygen to the brain. It can also cause permanent brain damage by cutting off the oxygen to the brain.

***For people who are interested, they do have counsels for specialist who are into prevention of abuse of the various drugs. Interesting fact.

Click to add text, images, and more.

Content copyright 2016. DrugFreeGangFree.org. All rights reserved.
Copyright 2012-2015. All rights reserved.

# WHAT WE ARE WORKING ON

1    Drug Free, Safety and Gang Free Product Donations to Places who may need those items
2    We have a drug treatment referral hotline.  If you are in need of drug treatment locally, please
call and leave an anonymous voicemail in the treatment referral voicemail.  Within 24 hours, one
of our specialist will contact you with a substance addictions treatment center location that is
near to you.  888-533-6661.  leave a voicemail 24/7 in the treatment referral voicemail box.
3    We have a felon employment program now.  (FEP Program).  Please email the jobs hotline, or
leave a voicemail on the JOBS extension for an open office job listing.

**Employment Application1.pdf**
**44.9 KB**

WE DO NOT ACCEPT APPLICATIONS VIA MAIL.    ONLY IN CLASS, PHONE VIA JOB
EXT OR FAX

We have some part time listings available now in customer service!    We will contact you for an
interview once the application is reviewed.

Currently hiring for a Project Director.  Minimum 3 years experience and masters degree in a
related field to apply.
Currently hiring for a Human Resources position.  Minimum 3 years experience, supervisor HR
experience is preferred.


jobs@drugfreegangfree.org

Our charity offers our employees and people in our 125 location local communities classes
consistently in resumes, college planning, job interview skills, and job interview etiquette as

needed to our employees as well as to the general public.

# CALL OR EMAIL FOR OUR UPDATED LOCATION LIST!


888-533-6661 leave a voicemail in the jobs extension, one of our highly trained managers will
contact you back as soon as we can with an application.  We do have a handful of part time jobs,
local to each of the 125 locations.



Click here to add a content block.

WARNING!  "PIG" the pitt bull is a mascot, KIDS, Pitt bulls are very very dangerous!   Do not approach strange Pitt Bull dogs, it is dangerous, "Pig" is a mascot who is with a professional during all of the videos!

Drug Free Gang Free (501c3) will miss our drug free dog Pig!

**\*\*\*\*Safety disclosure\*\*\* Pitt bulls are dangerous, talk to you're child about not approaching pitt bulls. KIDS SHOULD NOT APPROACH STRANGE PITT BULLS! The one in the video is with a trained professional at all times during the video**

Content copyright 2016. DrugFreeGangFree.org. All rights reserved.
Copyright 2012-2015. All rights reserved.

# ONLINE PRODUCTS



SOME OF OUR CURRENT PRODUCTS AVAILABLE ONLINE!

CURRENT DRUG AND GANG FREE CHARITY DONATION GIFT PRODUCTS. 100% of profits go to charity.

INTRODUCING A NEW PRODUCT!
Coming Soon! 12 Month Drug Free Gang Free Dog Calendar $20.00 (on request item)



| | | |
|---|---|---|
| GANG FREE T SHIRTS | | 15.00 |
| (S,M,L,XL,2XL ALL WHITE LOGO) | | |
| DRUG FREE T SHIRTS | | 15.00 |
| (S,M,L,XL,2XL, ALL WHITE LOGO) | | |
| GANG FREE HATS | (ONE SIZE white) | 18.00 |
| DRUG FREE HATS | (ONE SIZE white) | 18.00 |

| | |
|---|---|
| HOLIDAY CARD AND POTPOURRI GIFT | 4.00 |
| DRUG FREE COLORING BOOKS | 3.00 |
| GUN SAFETY COLORING BOOKS | 3.00 |
| INTERNET SAFETY VIDEO | 20.00 |
| INTERNET SAFETY COLORING BOOKS | 3.00 |
| DRUG FREE TEDDY BEARS WITH CAPES | 10.00 |
| (green, blue, purple, pink) | |
| GANG FREE MONKEYS WITH CAPES | 5.00 |
| (green, blue, purple, pink) | |
| DRUG FREE or GANG FREE BOOK BAGS | 8.00 |
| (pink or blue) | |

**SOME PRODUCT IMAGES**

Caped Bears                    T Shirts                    Coloring Books









Card and Potpourri                    Hats                         Bookbags

OUT OF ONLINE STOCK ITEMS

DRUG FREE GUM AND LOLLIPOPS
DRUG FREE PARENT WORK BOOK
DRUG FREE TEMPORARY TATTOOS
POLICE SAFETY BADGES

Please include in the comment section which items you all are requesting for now and which sizes. If you have any questions please email products@drugfreegangfree.org or call the products department at 8885336661. Ask us about our free product brochures available with photos, just not online at this point. Thanks! 100% of all product proceeds go to charity!



---

# PRODUCT VENDING

vendinginq@drugfreegangfree.org  888-533-6661 Cleaner Communities Section.  One of our specialist will contact you within one business day.

CURRENTLY NOT ACCEPTING APPLICATIONS!  CALL FOR A FULL LIST OF LOCATIONS OR YOU'RE LOCAL LOCATION
CHECK BACK!  THIS PAGE IS UNDER REPAIR!

*Seems page stolen*

---

## PRODUCT VENDING

The mission of the Product Distribution Section of Drug Free Gang Free is to work with organizations across the country to create therapeutic communities that offer job skills training, cost-free programs and services, and social enterprise employment.

The Product Distribution Section of Drug Free Gang Free's goal is to assist other organizations as they provide marginalized men, women, and youth with tools they need to change their lives and become productive members of their communities.



*Seems word for word infringed content*

At its core the Product Distribution Section of Drug Free Gang Free seeks to support the vendors in the community interested in working with felons in recovery, by supporting growth, products for jobs, and instilling the values of hard work as an alternative to relapse.

Drug Free Gang Free launched the Product Distribution training option for vendors in the community to offer services working with felons in April 2012.

The current 120 locations across the United States is open for branching . This unconventional "conference" included technical assistance, best practice, storytelling, workshops, panel discussions, and activities that helped share the knowledge and tools found within the Homeboy model.

The Drug Free Gang Free national organization now includes over 120 locations that are actively working to provide training and employment nationwide for felons in recovery.

The Products Distribution Department of Drug Free Gang Free works continuously to expand our horizons to new communities in need of services. Since April 2012, we have continued to push towards growth in expanding to new communities in need of services.

Since Drug Free Gang Free's start in 2004, the organization has helped hundreds of felons in recovery and the homeless in recovery to work towards the goal of work as an alternative to relapse. We have networked with a few vendors since 2012, towards expanding our services to the general public and communities in need.

The Product Distribution Department of Drug Free Gang Free provides training and values to any vendor who is interested in opening their doors to work with felons in recovery. The training is free, there are no membership dues for the training itself.

## The Goals of Drug Free Gang Free Product Distribution Department:

- To provide training (free) for vendors who wish to open their doors to working with former felons in recovery or the homeless populations.
- To continue this work expanding services in the local community
- To collectively support work, how to plan, apply for college, and how to do job interviews for employment as an alternative to relapse into drugs, correctional institutes or homelessness.

**To continue to expand in the local communities in need**

**Email:  productdistributions@drugfreegangfree.org**

888-533-6661 Product Distribution Section.   One of our specialist will contact you within one business day.

INFRINGED CONTENT

Material Violating Copyright

- Global Homeboy Network

Global Homeboy Network

## What is the Global Homeboy Network?

Since inception in 1988, Homeboy has become the largest and most successful gang intervention, rehabilitation and re-entry program in the world. Homeboy and its staff have become global thought leaders in all these areas in addition to social entrepreneurship. Homeboy has helped nurture into existence many similar programs around the world.

Many have asked our Founder, Father Greg Boyle - "Will you ever duplicate Homeboy in another location?" His response has always been that we do not want to be the "McDonalds of gang intervention.. with 100 billion gang members served." Instead, we are creating a movement to address the lethal absence of hope where this model may be contextualized.

In 2014, we formalized the **Global Homeboy Network** to ignite this model of social enterprise, a therapeutic community, healing, intentional attachment repair and jobs/skills training as an "exit ramp" for those stuck in a cycle of violence and incarceration. Convening and sharing strategies, best-practices and a common vision is part of the future of the Global Homeboy Network. Solidifying our services through implementation of lessons learned from the annual gathering, reconvening to share results and advancing the movement are Homeboy's dreams for the coming years. Part of Homeboy's wish is to broaden and further the impact of our service delivery model by establishing and building partnerships with peer organizations who can become a part of this movement.

## 2nd Annual Gathering of the Global Homeboy Network!



## WELCOME RECEPTION & MIXER:
Sunday, August 9th - 4:00 p.m. - 6:00 p.m. (*hors d'oeuvres included)
**Location:** Homegirl Café, 130 West Bruno St., Los Angeles, CA 90012

## GATHERING:
August 10th & 11th - 8:00 a.m. – 4:30 p.m.
**Location:** The California Endowment, 1000 N. Alameda St., Los Angeles, CA 90012
(*breakfast and lunch included with registration on both days)

*Early registration: Register before July 1 and cost is only $100 per person for all three days!*

*Regular registration: Register between July 2-July 15 and cost is $150 per person for all three days.*

*Late registration: Register between July 16-August 8 and cost is $200 per person for all three days.*



## WORKSHOP TOPICS INCLUDE:

Mental Health
Recovery & Resilience
Case Management
Peer Navigators & Mentorship
Educational Spaces
Fatherhood Support
Engaging Youth
Street Outreach
Social Entrepreneurial Programs
Law Enforcement Programs
Partnerships
Fundraising
Marketing
Social Enterprise

*Check this page again for updates. Please
email GlobalHomeboyNetwork@homeboyindustries.org with any questions.*

*HOTEL BLOCK:*
*Sheraton Los Angeles Downtown Hotel*
*711 South Hope Street*
*Los Angeles, CA 90017*
*(213) 612-3121*
*http://www.sheratonlosangelesdowntown.com/*
*(Block is under "Homeboy Industries" and has been extended until July 17th) \*\**
*SHERATON ALMOST SOLD OUT AS OF July 17 5pm\*\**

*\*\*HOTELS IN DOWNTOWN LA ARE SELLING OUT, SO PLEASE BOOK YOUR
LODGING ASAP\*\**

*Other hotels near Homeboy Industries can be found at this link.*

*Tours of Homeboy Industries will be available upon request on Wednesday, August 12th. If
interested, please contact Alegria at acastro@homeboyindustries.org.*

*For sponsorship information please email Alexa at arousso@homeboyindustries.org.*

**More info:** This gathering will bring together a variety of non-profit, institutional, and governmental agencies who have implemented, sought technical assistance, and/or expressed interest in learning more about the Homeboy comprehensive therapeutic approach to helping young men and women reclaim and reset their lives. We will share successes and lessons learned and spend quality/spiritual time with each other.

Last year's inaugural August 2014 Gathering convened 35 cities, 17 states, 6 countries, and 74 organizations! Nearly 200 attendees spent the day sharing, learning, and experiencing new ideas, methods, and approaches.

This year we have expanded the 2015 Gathering to include two full days of longer, multi-tiered, and more interactive learning presentations and discussions. We hope you will join us and contribute your organization's voice, insights, and stories in order to strengthen and advance the work of the Global Homeboy Network.

Your commitment, passion, and relentless spirit will improve the way we care for and serve disenfranchised members of society who today live on the margins but who tomorrow will be constructively and positively contributing to the fabric of our communities. We hope to see you in Los Angeles in August.

For questions please email: GlobalHomeboyNetwork@homeboyindustries.org






Please check out the Facebook photo album from the 2014 gathering by clicking here. Feel free to tag yourself and your colleagues in the photos to keep the buzz going about the network.

Join us on social media by posting using hashtag #ghng2015!

# Quick Links

- o Home
- o What We Do
- o Why We Do It
- o Join Us

- o <u>Who we are</u>
- o <u>Shop Homeboy</u>
- o <u>News & Events</u>
- o <u>Contact</u>
- <u>Media Kit</u>
- <u>Sitemap</u>

# HOPE HAS AN ADDRESS ᔆᴹ

- **Homeboy Industries**
- 130 W. Bruno St.
- Los Angeles, CA 90012

- Tel: (323) 526-1254
- Fax: (323) 526-1257
- <u>Info@Homeboyindustries.org</u>

# Stay Connected



- 



- 

# Sign up for our monthly

# September 2016 Global Homeboy Network Webpage

## Homeboy Industries is the largest and most successful gang rehabilitation and re-entry program in the world.

## HOMEBOY HAS

- **Changed the way the public views the recently incarcerated**
- **Led the social entrepreneurship movement**
- **Made Los Angeles a safer place**

Many have asked Homeboy Founder Fr. Greg Boyle, "Will you ever duplicate Homeboy in other cities?" And the surprising answer is "no." Having intentionally chosen not to be the "McDonald's of gang intervention programs'" Homeboy has long sought an expansion model that would both respect and develop the local voices that must be at the center of community-based services.

And so, in 2014, the Global Homeboy Network (GHN) was founded to answer that call.

The mission of the Global Homeboy Network is to work with organizations across the globe to create therapeutic communities that offer job skills training, cost-free programs and services, and social enterprise employment.



GHN's goal is to assist other organizations as they provide marginalized men, women, and youth with tools they need to change their lives and become productive members of their communities.

At its core the GHN seeks to widen the circle of compassion, tenderness, and kinship by fostering community, sanctuary, family, and a place of welcome for those on the margins. These values drive GHN's growth and direction.

Homeboy launched the GHN by hosting the first annual Global Homeboy Network Gathering in August 2014 to provide structure and clear strategic direction to the technical assistance that Homeboy has been providing for decades.

The inaugural gathering included leaders from communities across the United States and the globe who have long hoped to bring pieces of the Homeboy model to their work and organizations. This unconventional "conference" included technical assistance, best practice, storytelling, workshops, panel discussions, and activities that helped share the knowledge and tools found within the Homeboy model.

The Global Homeboy Network now includes over 85 organizations that are actively working to provide hope and a future to high-risk populations.

"We imagine no one standing outside of the circle, moving ourselves closer to the margins so that the margins themselves will be erased. We stand there with those whose dignity has been denied. We locate ourselves with the poor and the powerless and the voiceless. At the edges, we join the easily despised and the readily left out. We stand with the demonized so that the demonizing will stop. We situate ourselves right next to the disposable so that the day will come when we stop throwing people away."   -Fr. Greg Boyle

Widening the circle with compassion, tenderness, and kinship, creating community, sanctuary, family, a place to welcome those on the edges, on the margins— these ideas are what ultimately led to the creation of the Global Homeboy Network in 2014, and what continue to drive its growth and direction.

Since Homeboy's start in 1988, hundreds of organizations have visited Homeboy Industries Headquarters or asked for the organization to send staff as advisors, seeking guidance and concrete technical assistance as they work to envision, build, and grow organizations within their own communities. These organizations have come to Homeboy to learn more about our free programs and services, and social enterprise business model.

Homeboy provides concrete value to organizations across the globe who seek to replicate some or many of the successful programs and social enterprises that together make the Homeboy model. As a "lighthouse" for these organizations, Homeboy provides a starting map, as well as a strategic set of tools and program models, for leaders who hope to bring some piece of our model to their own communities. Together as a network of organizations we can collectively advocate for change, test and improve services for vulnerable populations, work together on public policy, and invest in making changes to the criminal justice system.

## OUR GOALS WITH THE GLOBAL HOMEBOY NETWORK

- **To strategically deploy Homeboy guest speakers for keynote, conference, and panel presentations, substantively guiding many other grassroots and clearly established non-profit organizations.**
- **To continue this work widening the circle, having more organizations join the Global Homeboy Network to serve those on the outer margins with hope, training and support.**
- **To collectively advance the lives of people at the margins through localized direct services, and to create a collaborative platform for advocacy with and on behalf of our clients across the world.**
- **To continue to grow the Network**

*Email globalhomeboynetwork@homeboyindustries.org with any questions*

# PREVIOUS TO INFRINGEMENT FINANCES

Form **990**

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

► The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No. 1545-0047

**20 12**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

**A** For the 2012 calendar year, or tax year beginning   January 1   , 2012, and ending   December 31   , 20

| B Check if applicable: | C Name of organization   Direct Establishments | | D Employer identification number |
|---|---|---|---|
| ☐ Address change | Doing Business As | | 45-4816056 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | E Telephone number |
| ☐ Initial return | P.O. Box 3202 | | 518-227-4730 |
| ☐ Terminated | City, town or post office, state, and ZIP code | | G Gross receipts $   112000 |
| ☐ Amended return | Cary, NC 27519 | | |
| ☑ Application pending | F Name and address of principal officer: | | H(a) Is this a group return for affiliates? ☐ Yes ☐ No |

**I** Tax-exempt status: ☑ 501(c)(3)   ☐ 501(c) ( )◄ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ► www.directestablishments.org   www.sellingestablishments.org

H(b) Are all affiliates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)
H(c) Group exemption number ►

**K** Form of organization: ☐ Corporation ☐ Trust ☐ Association ☐ Other ►   **L** Year of formation: 2004   **M** State of legal domicile: NC

## Part I   Summary

| | | | |
|---|---|---|---|
| **Activities & Governance** | **1** Briefly describe the organization's mission or most significant activities:   Drug Prevention and voc rehab for ex offenders and The drug prevention products are sold in the community. | | |
| | **2** Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| | **3** Number of voting members of the governing body (Part VI, line 1a) | **3** | |
| | **4** Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 3 |
| | **5** Total number of individuals employed in calendar year 2012 (Part V, line 2a) | **5** | 140 |
| | **6** Total number of volunteers (estimate if necessary) | **6** | 0 |
| | **7a** Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 198000 |
| | **b** Net unrelated business taxable income from Form 990-T, line 34 | **7b** | 0 |

| | | **Prior Year** | **Current Year** |
|---|---|---|---|
| **Revenue** | **8** Contributions and grants (Part VIII, line 1h) | 250000 | 150000 |
| | **9** Program service revenue (Part VIII, line 2g) | 110000 | 112000 |
| | **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 0 | 30000 |
| | **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 30000 | 18000 |
| | **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 310000 | 310000 |
| **Expenses** | **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3) | 183000 | 100000 |
| | **14** Benefits paid to or for members (Part IX, column (A), line 4) | 9000 | 10000 |
| | **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 40000 | 40000 |
| | **16a** Professional fundraising fees (Part IX, column (A), line 11e) | 2000 | 0 |
| | **b** Total fundraising expenses (Part IX, column (D), line 25) ► | | |
| | **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 60000 | 130000 |
| | **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 294000 | 270000 |
| | **19** Revenue less expenses. Subtract line 18 from line 12 | 18000 | -40000 |

| | | **Beginning of Current Year** | **End of Year** |
|---|---|---|---|
| **Net Assets or Fund Balances** | **20** Total assets (Part X, line 16) | 310000 | 310000 |
| | **21** Total liabilities (Part X, line 26) | 294000 | 270000 |
| | **22** Net assets or fund balances. Subtract line 21 from line 20 | 18000 | 40000 |

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | Signature of officer | | Date   4-10-13 |
|---|---|---|---|
| | Beth Ford | | |
| | Type or print name and title | | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ► | | | Firm's EIN ► | |
| | Firm's address ► | | | Phone no. | |

May the IRS discuss this return with the preparer shown above? (see instructions)   ☐ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.    Cat. No. 11282Y    Form **990** (2012)

W & I ~ FIELD SERVICE FIELD ASSISTANCE MIAMI, FL 33180 JUL 22 2013 RECEIVED 42-70-D

Form **990**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung
benefit trust or private foundation)

OMB No. 1545-0047

**2011**

Open to Public
Inspection

Department of the Treasury
Internal Revenue Service

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

**A** For the 2011 calendar year, or tax year beginning    January 1    , 2011, and ending    December 31    , 20  11

| B Check if applicable: | C Name of organization  Direct Selling Establishments | | D Employer identification number |
|---|---|---|---|
| ☐ Address change | Doing Business As  Direct Establishment | | 45-4816056 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | E Telephone number |
| ☐ Initial return | PO Box 3202 Academy Street Station | | 518-227-4730 |
| ☐ Terminated | City or town, state or country, and ZIP + 4 | | G Gross receipts $ |
| ☐ Amended return | Cary, NC 27519 | | |
| ☐ Application pending | F Name and address of principal officer: | | H(a) Is this a group return for affiliates? ☐ Yes ☐ No |
| | | | H(b) Are all affiliates included? ☐ Yes ☐ No |
| **I** Tax-exempt status: ☐ 501(c)(3) ☐ 501(c) (    )◄ (insert no.) ☐ 4947(a)(1) or ☐ 527 | | | If "No," attach a list. (see instructions) |
| **J** Website: ▶  www.directestablishment.com | | | H(c) Group exemption number ▶ |

**K** Form of organization: ☐ Corporation ☐ Trust ☐ Association ☑ Other ▶          **L** Year of formation: 2004   **M** State of legal domicile:  NC

### Part I    Summary

| | | | |
|---|---|---|---|
| **1** | Briefly describe the organization's mission or most significant activities:  We hire people with felonies (work with NC DOC on hiring people and giving jobs out of prison.  We have work and such for job training and scholarships for school, if it helps work and careers. | | |
| **2** | Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| **3** | Number of voting members of the governing body (Part VI, line 1a) . . . . . . | **3** | |
| **4** | Number of independent voting members of the governing body (Part VI, line 1b) . . . | **4** | |
| **5** | Total number of individuals employed in calendar year 2011 (Part V, line 2a) . . . . | **5** | |
| **6** | Total number of volunteers (estimate if necessary) . . . . . . . . . . . | **6** | |
| **7a** | Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . . | **7a** | |
| **b** | Net unrelated business taxable income from Form 990-T, line 34 . . . . . . . . | **7b** | |

| | | Prior Year | Current Year |
|---|---|---|---|
| **8** | Contributions and grants (Part VIII, line 1h) . . . . . . . . . . | 250000 | 250000 |
| **9** | Program service revenue (Part VIII, line 2g) . . . . . . . . . | 45000 | 110000 |
| **10** | Investment income (Part VIII, column (A), lines 3, 4, and 7d) . . . . | 0 | 20000 |
| **11** | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) . | 20000 | 30000 |
| **12** | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 65000 | 310000 |
| **13** | Grants and similar amounts paid (Part IX, column (A), lines 1–3) . . . . | 0 | 100000 |
| **14** | Benefits paid to or for members (Part IX, column (A), line 4) . . . . . | 9000 | 9000 |
| **15** | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 30000 | 40000 |
| **16a** | Professional fundraising fees (Part IX, column (A), line 11e) . . . . . | 600 | 2000 |
| **b** | Total fundraising expenses (Part IX, column (D), line 25) ▶      2000 | | |
| **17** | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . . | 20000 | 60000 |
| **18** | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) . | 59500 | 310000 |
| **19** | Revenue less expenses. Subtract line 18 from line 12 . . . . . . | | |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **20** | Total assets (Part X, line 16) . . . . . . . . . . . . . | 65000 | 310000 |
| **21** | Total liabilities (Part X, line 26) . . . . . . . . . . . . | 59500 | 294000 |
| **22** | Net assets or fund balances. Subtract line 21 from line 20 . . . . . | 6600 | 18000 |

### Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is
true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ▶  Signature of officer | Date  4-5-12 |
|---|---|---|
| | ▶  Laura Jones  Prime Major  Type or print name and title. | |

| Paid Preparer Use Only | Print/Type preparer's name  Beth Ford | Preparer's signature | Date | Check ☐ if self-employed | PTIN  45-4816045 |
|---|---|---|---|---|---|
| | Firm's name  ▶  Direct Establishment | | | Firm's EIN ▶ | 45-4816056 |
| | Firm's address ▶  PO Box 3202 Academy Street Station  Cary, NC 27519 | | | Phone no. | 518-227-4730 |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.          Cat. No. 11282Y          Form **990** (2011)

Form **990**

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No. 1545-0047

**2010**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

**A** For the 2010 calendar year, or tax year beginning **January 1** , 2010, and ending **December 31** , 20 **10**

| B Check if applicable: | C Name of organization **Direct Selling Establishment** | | D Employer identification number |
|---|---|---|---|
| ☐ Address change | Doing Business As | | 45-4816056 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | E Telephone number |
| ☐ Initial return | **po box 3202** | | 5182274730 |
| ☐ Terminated | City or town, state or country, and ZIP + 4 | | |
| ☐ Amended return | **cary, nc 2759** | | G Gross receipts $ |
| ☐ Application pending | F Name and address of principal officer: | | H(a) Is this a group return for affiliates? ☐ Yes ☐ No |

**I** Tax-exempt status: ☐ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no.) ☐ 4947(a)(1) or ☐ 527

**H(b)** Are all affiliates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)

**J** Website: ▶ www.directestablishment.com

**H(c)** Group exemption number ▶

**K** Form of organization: ☐ Corporation ☐ Trust ☐ Association ☑ Other ▶ **L** Year of formation: **2004** **M** State of legal domicile: **NC**

## Part I | Summary

**1** Briefly describe the organization's mission or most significant activities:
We hire people with felonies (work with NC DOC on hiring people and giving jobs out of prison. We have work and such for job training and scholarships for school, if it helps work and careers.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | |
|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) . . . . . | **3** | |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) . . . . | **4** | |
| **5** Total number of individuals employed in calendar year 2010 (Part V, line 2a) . . . . | **5** | |
| **6** Total number of volunteers (estimate if necessary) . . . . . | **6** | |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . | **7a** | |
| **b** Net unrelated business taxable income from Form 990-T, line 34 . . . . . | **7b** | |

| | | Prior Year | Current Year |
|---|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) . . . . . | | 0 | 0 |
| **9** Program service revenue (Part VIII, line 2g) . . . . . | | 45000 | 45000 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) . . . . . | | 0 | 0 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) . . . . . | | 20000 | 20000 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) . . . . . | | 65000 | 65000 |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3) . . . . . | | 0 | 0 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) . . . . . | | 9000 | 9000 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) . . . . . | | 30000 | 30000 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) . . . . . | | 500 | 500 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ▶ | | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24f) . . . . . | | 20000 | 20000 |
| **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) . . . . . | | | |
| **19** Revenue less expenses. Subtract line 18 from line 12 . . . . . | | 59500 | 59500 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **20** Total assets (Part X, line 16) . . . . . | | 65000 | 65000 |
| **21** Total liabilities (Part X, line 26) . . . . . | | 59500 | 59500 |
| **22** Net assets or fund balances. Subtract line 21 from line 20 | | 5500 | 5500 |

## Part II | Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

Signature of officer — Beth Ford

Date

Type or print name and title

| Paid Preparer Use Only | Print/Type preparer's name **Beth Ford** | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ **Direct Establishments** | | | Firm's EIN ▶ | 45-4816056 |
| | Firm's address ▶ **600-D Chatham St Cary, NC 27513** | | | Phone no. | 518-227-4730 |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.

Cat. No. 11282Y

Form **990** (2010)

# FINANCIAL LOSS AS OF 2016


Member
**FDIC**


# NEWBRIDGE
## BANK

P.O. Box 867 • Lexington, NC • 27293-0867

9678 1 AT 0.396        P:9678 / T:34 / S:

DIRECT ESTABLISHMENT
PO BOX 3202
CARY NC 27519-3202

- Have you recently moved?
- Has your telephone number changed?
- Do you have a new email address?
To ensure we provide the best possible service and to help us protect your
financial privacy, we may need to contact you from time to time.
**That's why we need to make sure your contact information is
up-to-date.**
Please help us update our records by letting us know if your contact
information has changed.

<T> 30-7
0
0

===========================================================================
NON-PROFIT CHECKING 30154 ACCOUNT 8840000829
===========================================================================

| | | | | |
|---|---|---|---|---|
| | | LAST STATEMENT 03/31/16 | 120.00 |
| MINIMUM BALANCE | 120.00 | CREDITS | .00 |
| AVERAGE BALANCE | 120.00 | DEBITS | .00 |
| | | THIS STATEMENT 04/29/16 | 120.00 |

## INTEREST

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | .00 | INTEREST EARNED: | .00 |
| INTEREST PAID THIS PERIOD: | .00 | DAYS IN PERIOD: | |
| | | ANNUAL PERCENTAGE YIELD EARNED: | .00% |

## ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES: | $.00 | $.00 |
| TOTAL RETURNED ITEM FEES: | $.00 | $.00 |

**Important Notice**
If you are currently using NewBridge Bank's Automatic Overdraft Protection product, we encourage you to explore less costly alternatives, such as Credit Reserve or
automatic transfer from another account. Please contact our Customer Service Center at 800-456-6505 or visit your convenient NewBridge Bank Office for more information

POLICE REPORT OVER THEFT

| File No. | Law Enforcement Case No. | LID No. | SID No. | FBI No. | |
|---|---|---|---|---|---|

## MISDEMEANOR CRIMINAL SUMMONS

**Offense**

Stalking and Harrassment

### THE STATE OF NORTH CAROLINA VS.

**Name And Address Of Defendant**

UNKNOWN

130 Bruno Street
Los Angeles CA 90012

| Race | Sex | Date Of Birth | Age |
|---|---|---|---|
| | | | |

**Social Security No.** | **Drivers License No. & State**

**Name Of Defendant's Employer**
Homeboy Industries

| Offense Code(s) | Offense In Violation Of G.S. |
|---|---|
| GS-277.3A | GS-277.3A |
| GS14-196 | GS14-196 |

**Date Of Offense**
10/31/2012

**Date Of Arrest & Check Digit No. (As Shown On Fingerprint Card)**

**Complainant (Name, Address Or Department)**

Beth Ford
Drug Free Gang Free
PO BOX 3202
Cary NC 27519

**Names & Addresses Of Witnesses (Including Counties & Telephone Nos.)**

☐ **Misdemeanor Offense Which Requires Fingerprinting Per Fingerprint Plan** | **Date Issued**

---

## STATE OF NORTH CAROLINA

Wake _____ County

In The General Court Of Justice
District Court Division

**To the defendant:**

I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above you unlawfully and willfully did

Theft   GS-277.3A  Stalking Abott
GS14-196  Herrasment

This act was in violation of the law referred to in this Criminal Summons. This Summons is issued upon information furnished under oath by the complainant listed. You are ORDERED to appear before the Court at the location, date and time indicated below to answer to the charge. If you fail to appear, an order for your arrest may be issued and you may be held in CONTEMPT OF COURT. Arrest and/or contempt for failure to appear is in addition to any sentence which may be imposed for the crime charged.

☐ The undersigned finds the following cause to set a court date more than one month from the issue of this summons: _____

| Signature | Location Of Court | Court Date |
|---|---|---|
| ☐ Magistrate ☐ Deputy CSC | | **Court Time** |
| ☐ Assistant CSC ☐ Clerk Of Superior Court | | ☐ AM ☐ PM |

(Over)

AOC-CR-113, Rev. 4/14
© 2014 Administrative Office of the Courts

<table>
<tr><td colspan="2">If this Criminal Summons is not served within ninety (90) days or by the date the defendant is directed to appear, whichever is earlier, it must be returned to the Clerk of Court in the county in which it was issued with the reason for the failure of service noted thereon.</td><td>District Attorney</td><td>☐ Waived<br>☐ Not Indigent<br>☐ Denied</td><td>Attorney For Defendant</td><td>☐ Appointed<br>☐ Retained</td><td colspan="2">PRIOR CONVICTIONS:<br>No./Level:   0☐ I (0)   ☐ II (1-4)   ☐ III (5+)</td></tr>
</table>

**RETURN OF SERVICE**

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

**REDELIVERY/REISSUANCE**

| Date | Signature | ☐ Dep. CSC<br>☐ Assist. CSC<br>☐ CSC |
|---|---|---|

☐ The above clerk finds the following cause to set a court date more than one month from reissue:

**RETURN FOLLOWING REDELIVERY/REISSUANCE**

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

**APPEAL ENTRIES**

☐ The defendant, in open court, gives notice of appeal to the Superior Court.

☐ The current pretrial release order is modified as follows:

| Date | Signature Of District Court Judge |
|---|---|

PLEA: ☐ guilty   ☐ no contest _____    VERDICT: ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty   ☐ no contest _____    ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty   ☐ no contest _____    ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty _____    ☐ not guilty _____

JUDGMENT: The defendant appeared in open court and freely, voluntarily and understandingly entered the above plea; on the above verdict it is ORDERED that the defendant:   ☐ pay costs and a fine of $ _____.

☐ be imprisoned for a term of _____ days in the custody of the   ☐ sheriff. ☐ MCP. ☐ DAC.* Pretrial credit _____ days served.

☐ Work release   ☐ is recommended.   ☐ is not recommended.   [☐ is ordered. (use form AOC-CR-602)]

☐ The Court finds that a   ☐ longer   ☐ shorter   period of probation, than that which is specified in G.S. 15A-1343.2(d), is necessary.

☐ Execution of the sentence is suspended and the defendant is placed on unsupervised probation* for _____ months, subject to the following conditions: 1. commit no criminal offense in any jurisdiction. 2. possess no firearm, explosive or other deadly weapon listed in G.S. 14-269. 3. remain gainfully and suitably employed or faithfully pursue a course of study or of vocational training, that will equip the defendant for suitable employment, and abide by all rules of the institution. 4. satisfy child support and family obligations, as required by the Court. 5. pay to the Clerk the costs of court and any additional sums shown below.

| Fine | Restitution** | Attorney's Fee | Community Service Fee | Other |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

**Name(s), address(es), and amount(s) for aggrieved party(ies) to receive restitution: NOTE TO CLERK: Record SSN or Tax ID. No. of aggrieved party(ies) on AOC-CR-382, "Certification Of Identity (Victims' Restitution)/Certification Of Identity (Witness Attendance)."

☐ 6. complete _____ hours of community service during the first _____ days of probation, as directed by the judicial services coordinator, and pay the fee prescribed by G.S. 143B-708 within _____ days.

☐ 7. not be found in or on the premises of the complainant or _____

☐ 8. not assault, communicate with or be in the presence of the complainant or _____

☐ 9. provide a DNA sample pursuant to G.S. 15A-266.4. (AOC-CR-319)

☐ 10. Other: _____

It is ORDERED that this:   ☐ Judgment is continued upon payment of costs.
   ☐ case is consolidated for judgment with _____.
   ☐ sentence is to run at the expiration of the sentence in _____.

☐ COMMITMENT: It is ORDERED that the Clerk deliver two certified copies of this Judgment and Commitment to the sheriff and that the sheriff cause the defendant to be retained in custody to serve the sentence imposed or until the defendant shall have complied with the conditions of release pending appeal.

| Date | Name Of District Court Judge (Type Or Print) | Signature Of District Court Judge |
|---|---|---|

**CERTIFICATION**

I certify that this Judgment is a true and complete copy of the original which is on file in this case.

| Date | Date Delivered To Sheriff | Signature | ☐ Dep. CSC<br>☐ Asst. CSC   ☐ CSC |
|---|---|---|---|

*NOTE: If DWI, use AOC-CR-342 (active) or AOC-CR-310 (probation). If active sentence to DAC, use AOC-CR-602. If supervised probation, use AOC-CR-604.

| File No. | Law Enforcement Case No. | LID No. | SID No. | FBI No. | |
|---|---|---|---|---|---|

## MISDEMEANOR CRIMINAL SUMMONS

**STATE OF NORTH CAROLINA**

Guilford _____ County

In The General Court Of Justice
District Court Division

*Offense*

Stalking and Harrassment

### THE STATE OF NORTH CAROLINA VS.

*Name And Address Of Defendant*

UNKNOWN

130 Bruno Street
Los Angeles CA 90012

| Race | Sex | Date Of Birth | Age |
|---|---|---|---|
| | | | |

| Social Security No. | Drivers License No. & State |
|---|---|
| | |

*Name Of Defendant's Employer*
Homeboy Industries

| Offense Code(s) | Offense In Violation Of G.S. |
|---|---|
| GS-277.3A | GS-277.3A |
| GS14-196 | GS14-196 |

*Date Of Offense*
07/03/2011

*Date Of Arrest & Check Digit No. (As Shown On Fingerprint Card)*

*Complainant (Name, Address Or Department)*

Beth Ford
Drug Free Gang Free
PO BOX 3202
Cary NC 27519

*Names & Addresses Of Witnesses (Including Counties & Telephone Nos.)*

**To the defendant:**
I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above you unlawfully and willfully did

GS-277.3A Stalking Theft
GS14-196 Harassment

This act was in violation of the law referred to in this Criminal Summons. This Summons is issued upon information furnished under oath by the complainant listed. You are ORDERED to appear before the Court at the location, date and time indicated below to answer to the charge. If you fail to appear, an order for your arrest may be issued and you may be held in CONTEMPT OF COURT. Arrest and/or contempt for failure to appear is in addition to any sentence which may be imposed for the crime charged.

☐ The undersigned finds the following cause to set a court date more than one month from the issue of this summons: _____.

| Signature | Location Of Court | Court Date |
|---|---|---|
| ☐ Magistrate ☐ Deputy CSC | | **Court Time** |
| ☐ Assistant CSC ☐ Clerk Of Superior Court | | ☐ AM ☐ PM |

☐ **Misdemeanor Offense Which Requires Fingerprinting Per Fingerprint Plan** | *Date Issued*

(Over)

AOC-CR-113, Rev. 4/14
© 2014 Administrative Office of the Courts

If this Criminal Summons is not served within ninety (90) days or by the date the defendant is directed to appear, whichever is earlier, it must be returned to the Clerk of Court in the county in which it was issued with the reason for the failure of service noted thereon.

## RETURN OF SERVICE

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|
| | | | |

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|
| | |

Department Or Agency Of Officer

## REDELIVERY/REISSUANCE

| Date | Signature | ☐ Dep. CSC ☐ Assist. CSC ☐ CSC |
|---|---|---|
| | | |

☐ The above clerk finds the following cause to set a court date more than one month from reissue:

## RETURN FOLLOWING REDELIVERY/REISSUANCE

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|
| | | | |

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|
| | |

Department Or Agency Of Officer

## APPEAL ENTRIES

☐ The defendant, in open court, gives notice of appeal to the Superior Court.

☐ The current pretrial release order is modified as follows:

| Date | Signature Of District Court Judge |
|---|---|
| | |

---

| District Attorney | | Attorney For Defendant | | | PRIOR CONVICTIONS: |
|---|---|---|---|---|---|
| | ☐ Waived ☐ Not Indigent ☐ Denied | | ☐ Appointed ☐ Retained | No./Level: | 0 ☐ I (0) ____ ☐ II (1-4) ☐ III (5+) |

PLEA: ☐ guilty ☐ no contest _____ VERDICT: ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty ☐ no contest _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty ☐ no contest _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty _____ ☐ not guilty _____

JUDGMENT: The defendant appeared in open court and freely, voluntarily and understandingly entered the above plea; on the above verdict it is ORDERED that the defendant: ☐ pay costs and a fine of $ _____ .

☐ be imprisoned for a term of _____ days in the custody of the ☐ sheriff. ☐ MCP. ☐ DAC.* Pretrial credit _____ days served.

☐ Work release ☐ is recommended. ☐ is not recommended. [☐ is ordered. (use form AOC-CR-602)]

☐ The Court finds that a ☐ longer ☐ shorter period of probation, than that which is specified in G.S. 15A-1343.2(d), is necessary.

☐ Execution of the sentence is suspended and the defendant is placed on unsupervised probation* for _____ months, subject to the following conditions: 1. commit no criminal offense in any jurisdiction. 2. possess no firearm, explosive or other deadly weapon listed in G.S. 14-269. 3. remain gainfully and suitably employed or faithfully pursue a course of study or of vocational training, that will equip the defendant for suitable employment, and abide by all rules of the institution. 4. satisfy child support and family obligations, as required by the Court. 5. pay to the Clerk the costs of court and any additional sums shown below.

| Fine | Restitution** | Attorney's Fee | Community Service Fee | Other |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

**Name(s), address(es), and amount(s) for aggrieved party(ies) to receive restitution: NOTE TO CLERK: Record SSN or Tax ID. No. of aggrieved party(ies) on AOC-CR-382, "Certification Of Identity (Victims' Restitution)/Certification Of Identity (Witness Attendance)."

☐ 6. complete _____ hours of community service during the first _____ days of probation, as directed by the judicial services coordinator, and pay the fee prescribed by G.S. 143B-708 within _____ days.

☐ 7. not be found in or on the premises of the complainant or _____ .

☐ 8. not assault, communicate with or be in the presence of the complainant or _____ .

☐ 9. provide a DNA sample pursuant to G.S. 15A-266.4. (AOC-CR-319)

☐ 10. Other: _____

It is ORDERED that this: ☐ Judgment is continued upon payment of costs.
☐ case be consolidated for judgment with _____ .
☐ sentence is to run at the expiration of the sentence in _____ .

☐ COMMITMENT: It is ORDERED that the Clerk deliver two certified copies of this Judgment and Commitment to the sheriff and that the sheriff cause the defendant to be retained in custody to serve the sentence imposed or until the defendant shall have complied with the conditions of release pending appeal.

| Date | Name Of District Court Judge (Type Or Print) | Signature Of District Court Judge |
|---|---|---|
| | | |

## CERTIFICATION

I certify that this Judgment is a true and complete copy of the original which is on file in this case.

| Date | Date Delivered To Sheriff | Signature | ☐ Dep. CSC ☐ Asst. CSC ☐ CSC |
|---|---|---|---|
| | | | |

*NOTE: If DWI, use AOC-CR-342 (active) or AOC-CR-310 (probation). If active sentence to DAC, use AOC-CR-602. If supervised probation, use AOC-CR-604.

| File No. | Law Enforcement Case No. | LID No. | SID No. | FBI No. | |
|---|---|---|---|---|---|

| **MISDEMEANOR CRIMINAL SUMMONS** | **STATE OF NORTH CAROLINA** In The General Court Of Justice |
|---|---|

Offense

Stalking and Harrassment

Wake _____ County    District Court Division

### THE STATE OF NORTH CAROLINA VS.

Name And Address Of Defendant
Natalie

130 Bruno Street
Los Angeles CA 90012

**To the defendant:**
I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above you unlawfully and willfully did

GS-277.3A  Theft
GS 14-196  Harrassment

| Race | Sex | Date Of Birth | Age |
|---|---|---|---|

| Social Security No. | Drivers License No. & State |
|---|---|

Name Of Defendant's Employer
Homeboy Industries

| Offense Code(s) | Offense In Violation Of G.S. |
|---|---|
| GS-277.3A | GS-277.3A |
| GS14-196 | GS14-196 |

Date Of Offense
01/05/2011

Date Of Arrest & Check Digit No. (As Shown On Fingerprint Card)

Complainant (Name, Address Or Department)

Beth Ford
Drug Free Gang Free
PO BOX 3202
Cary NC 27519

Names & Addresses Of Witnesses (Including Counties & Telephone Nos.)

This act was in violation of the law referred to in this Criminal Summons. This Summons is issued upon information furnished under oath by the complainant listed. You are ORDERED to appear before the Court at the location, date and time indicated below to answer to the charge. If you fail to appear, an order for your arrest may be issued and you may be held in CONTEMPT OF COURT. Arrest and/or contempt for failure to appear is in addition to any sentence which may be imposed for the crime charged.

☐ The undersigned finds the following cause to set a court date more than one month from the issue of this summons: _____.

| Signature | Location Of Court | Court Date |
|---|---|---|

| ☐ Misdemeanor Offense Which Requires Fingerprinting Per Fingerprint Plan | Date Issued | ☐ Magistrate  ☐ Deputy CSC ☐ Assistant CSC  ☐ Clerk Of Superior Court | | Court Time ☐ AM ☐ PM |
|---|---|---|---|---|

(Over)

If this Criminal Summons is not served within ninety (90) days or by the date the defendant is directed to appear, whichever is earlier, it must be returned to the Clerk of Court in the county in which it was issued with the reason for the failure of service noted thereon.

**RETURN OF SERVICE**

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

**REDELIVERY/REISSUANCE**

| Date | Signature | ☐ Dep. CSC ☐ Assist. CSC ☐ CSC |
|---|---|---|

☐ The above clerk finds the following cause to set a court date more than one month from reissue:

**RETURN FOLLOWING REDELIVERY/REISSUANCE**

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

**APPEAL ENTRIES**

☐ The defendant, in open court, gives notice of appeal to the Superior Court.

☐ The current pretrial release order is modified as follows:

| Date | Signature Of District Court Judge |
|---|---|

---

| District Attorney | ☐ Waived ☐ Not Indigent ☐ Denied | Attorney For Defendant | ☐ Appointed ☐ Retained | **PRIOR CONVICTIONS:** No./Level: 0 ☐ I (0) ☐ II (1-4) ☐ III (5+) |
|---|---|---|---|---|

PLEA: ☐ guilty  ☐ no contest _____  VERDICT: ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty  ☐ no contest _____  ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty  ☐ no contest _____  ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty _____  ☐ not guilty _____

**JUDGMENT:** The defendant appeared in open court and freely, voluntarily and understandingly entered the above plea; on the above verdict it is ORDERED that the defendant: ☐ pay costs and a fine of $ _____.

☐ be imprisoned for a term of _____ days in the custody of the ☐ sheriff. ☐ MCP. ☐ DAC.* Pretrial credit _____ days served.
☐ Work release ☐ is recommended. ☐ is not recommended. [☐ is ordered. (use form AOC-CR-602)]
☐ The Court finds that a ☐ longer ☐ shorter period of probation, than that which is specified in G.S. 15A-1343.2(d), is necessary.
☐ Execution of the sentence is suspended and the defendant is placed on unsupervised probation* for _____ months, subject to the following conditions: 1. commit no criminal offense in any jurisdiction. 2. possess no firearm, explosive or other deadly weapon listed in G.S. 14-269. 3. remain gainfully and suitably employed or faithfully pursue a course of study of vocational training, that will equip the defendant for suitable employment, and abide by all rules of the institution. 4. satisfy child support and family obligations, as required by the Court. 5. pay to the Clerk the costs of court and any additional sums shown below.

| Fine | Restitution** | Attorney's Fee | Community Service Fee | Other |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

**Name(s), address(es), and amount(s) for aggrieved party(ies) to receive restitution: NOTE TO CLERK: Record SSN or Tax ID. No. of aggrieved party(ies) on AOC-CR-382, "Certification Of Identity (Victims' Restitution)/Certification Of Identity (Witness Attendance)."

☐ 6. complete _____ hours of community service during the first _____ days of probation, as directed by the judicial services coordinator, and pay the fee prescribed by G.S. 143B-708 within _____ days.
☐ 7. not be found in or on the premises of the complainant or _____.
☐ 8. not assault, communicate with or be in the presence of the complainant or _____.
☐ 9. provide a DNA sample pursuant to G.S. 15A-266.4. (AOC-CR-319)
☐ 10. Other: _____

It is ORDERED that this: ☐ Judgment is continued upon payment of costs.
☐ case be consolidated for judgment with _____.
☐ sentence is to run at the expiration of the sentence in _____.

☐ **COMMITMENT:** It is ORDERED that the Clerk deliver <u>two</u> certified copies of this Judgment and Commitment to the sheriff and that the sheriff cause the defendant to be retained in custody to serve the sentence imposed or until the defendant shall have complied with the conditions of release pending appeal.

| Date | Name Of District Court Judge (Type Or Print) | Signature Of District Court Judge |
|---|---|---|

**CERTIFICATION**

I certify that this Judgment is a true and complete copy of the original which is on file in this case.

| Date | Date Delivered To Sheriff | Signature | ☐ Dep. CSC ☐ Asst. CSC ☐ CSC |
|---|---|---|---|

*NOTE: If DWI, use AOC-CR-342 (active) or AOC-CR-310 (probation). If active sentence to DAC, use AOC-CR-602. If supervised probation, use AOC-CR-604.

| File No. | Law Enforcement Case No. | LID No. | SID No. | FBI No. |  |
|---|---|---|---|---|---|

## MISDEMEANOR CRIMINAL SUMMONS

**Offense**

Stalking and Harrassment

### THE STATE OF NORTH CAROLINA VS.

**Name And Address Of Defendant**
~~Unknown ID, Homeboy Industries group~~""

130 Bruno Street
Los Angeles CA 90012

| Race | Sex | Date Of Birth | Age |
|---|---|---|---|
| | | | |

| Social Security No. | Drivers License No. & State |
|---|---|
| | |

**Name Of Defendant's Employer**
Homeboy Industries

| Offense Code(s) | Offense In Violation Of G.S. |
|---|---|
| GS-277.3A | GS-277.3A |
| GS14-196 | GS14-196 |

**Date Of Offense**
06/07/2014

**Date Of Arrest & Check Digit No. (As Shown On Fingerprint Card)**

**Complainant (Name, Address Or Department)**

Beth Ford
Drug Free Gang Free
PO BOX 3202
Cary NC 27519

**Names & Addresses Of Witnesses (Including Counties & Telephone Nos.)**

| ☑ Misdemeanor Offense Which Requires Fingerprinting Per Fingerprint Plan | Date Issued |
|---|---|

AOC-CR-113, Rev. 4/14
© 2014 Administrative Office of the Courts

---

## STATE OF NORTH CAROLINA

Wake _____ County

In The General Court Of Justice
District Court Division

**To the defendant:**
I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above you unlawfully and willfully did

GS 277.3A Stalking
GS14-196 Harrassment / Theft

This act was in violation of the law referred to in this Criminal Summons. This Summons is issued upon information furnished under oath by the complainant listed. You are ORDERED to appear before the Court at the location, date and time indicated below to answer to the charge. If you fail to appear, an order for your arrest may be issued and you may be held in CONTEMPT OF COURT. Arrest and/or contempt for failure to appear is in addition to any sentence which may be imposed for the crime charged.

☐ The undersigned finds the following cause to set a court date more than one month from the issue of this summons: _____.

| Signature | Location Of Court | Court Date |
|---|---|---|
| ☐ Magistrate ☐ Deputy CSC | | Court Time |
| ☐ Assistant CSC ☐ Clerk Of Superior Court | | ☐ AM ☐ PM |

(Over)

If this Criminal Summons is not served within ninety (90) days or by the date the defendant is directed to appear, whichever is earlier, it must be returned to the Clerk of Court in the county in which it was issued with the reason for the failure of service noted thereon.

| District Attorney | ☐ Waived ☐ Not Indigent ☐ Denied | Attorney For Defendant | ☐ Appointed ☐ Retained | **PRIOR CONVICTIONS:** No./Level: ☐ 0 ☐ I (0) ☐ II (1-4) ☐ III (5+) |

**PLEA:** ☐ guilty ☐ no contest _____ **VERDICT:** ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty ☐ no contest _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty ☐ no contest _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty ☐ not guilty _____

### RETURN OF SERVICE

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |

Department Or Agency Of Officer

**JUDGMENT:** The defendant appeared in open court and freely, voluntarily and understandingly entered the above plea; on the above verdict it is ORDERED that the defendant: ☐ pay costs and a fine of $ _____
☐ be imprisoned for a term of _____ days in the custody of the ☐ sheriff. ☐ MCP. ☐ DAC.* Pretrial credit _____ days served.
☐ Work release ☐ is recommended. ☐ is not recommended. [☐ is ordered. *(use form AOC-CR-602)*]
☐ The Court finds that a ☐ longer ☐ shorter period of probation, than that which is specified in G.S. 15A-1343.2(d), is necessary.
☐ Execution of the sentence is suspended and the defendant is placed on unsupervised probation* for _____ months, subject to the following conditions: 1. commit no criminal offense in any jurisdiction. 2. possess no firearm, explosive or other deadly weapon listed in G.S. 14-269. 3. remain gainfully and suitably employed or faithfully pursue a course of study or of vocational training, that will equip the defendant for suitable employment, and abide by all rules of the institution. 4. satisfy child support and family obligations, as required by the Court. 5. pay to the Clerk the costs of court and any additional sums shown below.

| Fine | Restitution** | Attorney's Fee | Community Service Fee | Other |
| $ | $ | $ | $ | $ |

**Name(s), address(es), and amount(s) for aggrieved party(ies) to receive restitution: NOTE TO CLERK: Record SSN or Tax ID. No. of aggrieved party(ies) on AOC-CR-382, "Certification Of Identity (Victims' Restitution)/Certification Of Identity (Witness Attendance)."

### REDELIVERY/REISSUANCE

| Date | Signature | ☐ Dep. CSC ☐ Assist. CSC ☐ CSC |

☐ The above clerk finds the following cause to set a court date more than one month from reissue:

### RETURN FOLLOWING REDELIVERY/REISSUANCE

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |

Department Or Agency Of Officer

☐ 6. complete _____ hours of community service during the first _____ days of probation, as directed by the judicial services coordinator, and pay the fee prescribed by G.S. 143B-708 within _____ days.
☐ 7. not be found in or on the premises of the complainant or _____
☐ 8. not assault, communicate with or be in the presence of the complainant or _____
☐ 9. provide a DNA sample pursuant to G.S. 15A-266.4. (AOC-CR-319)
☐ 10. Other: _____

### APPEAL ENTRIES

☐ The defendant, in open court, gives notice of appeal to the Superior Court.
☐ The current pretrial release order is modified as follows:

| Date | Signature Of District Court Judge |

It is **ORDERED** that this: ☐ Judgment is continued upon payment of costs.
☐ case be consolidated for judgment with _____
☐ sentence is to run at the expiration of the sentence in _____

☐ **COMMITMENT:** It is ORDERED that the Clerk deliver <u>two</u> certified copies of this Judgment and Commitment to the sheriff and that the sheriff cause the defendant to be retained in custody to serve the sentence imposed or until the defendant shall have complied with the conditions of release pending appeal.

| Date | Name Of District Court Judge (Type Or Print) | Signature Of District Court Judge |

### CERTIFICATION

I certify that this Judgment is a true and complete copy of the original which is on file in this case.

| Date | Date Delivered To Sheriff | Signature | ☐ Dep. CSC ☐ Asst. CSC ☐ CSC |

*NOTE: If DWI, use AOC-CR-342 (active) or AOC-CR-310 (probation). If active sentence to DAC, use AOC-CR-602. If supervised probation, use AOC-CR-604.

| File No. | Law Enforcement Case No. | LID No. | SID No. | FBI No. | |
|---|---|---|---|---|---|

## MISDEMEANOR CRIMINAL SUMMONS

Offense

Stalking and Harrassment

### STATE OF NORTH CAROLINA

_____ Wake _____ County

In The General Court Of Justice
District Court Division

### THE STATE OF NORTH CAROLINA VS.

Name And Address Of Defendant

Natalie

130 Bruno Street
Los Angeles CA 90012

**To the defendant:**
I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above you unlawfully and willfully did

GS-277.3A        Stalking
GS14-196        Harrassment

| Race | Sex | Date Of Birth | Age |
|---|---|---|---|

| Social Security No. | Drivers License No. & State |
|---|---|

Name Of Defendant's Employer
Homeboy Industries

| Offense Code(s) | Offense In Violation Of G.S. |
|---|---|
| GS-277.3A | GS-277.3A |
| GS14-196 | GS14-196 |

Date Of Offense
03/05/2011

Date Of Arrest & Check Digit No. (As Shown On Fingerprint Card)

Complainant (Name, Address Or Department)

Beth Ford
Drug Free Gang Free
PO BOX 3202
Cary NC 27519

Names & Addresses Of Witnesses (Including Counties & Telephone Nos.)

This act was in violation of the law referred to in this Criminal Summons. This Summons is issued upon information furnished under oath by the complainant listed. You are ORDERED to appear before the Court at the location, date and time indicated below to answer to the charge. If you fail to appear, an order for your arrest may be issued and you may be held in CONTEMPT OF COURT. Arrest and/or contempt for failure to appear is in addition to any sentence which may be imposed for the crime charged.

☐ The undersigned finds the following cause to set a court date more than one month from the issue of this summons: _____

| Signature | Location Of Court | Court Date |
|---|---|---|

| ☐ **Misdemeanor Offense Which Requires Fingerprinting Per Fingerprint Plan** | Date Issued | ☐ Magistrate ☐ Deputy CSC<br>☐ Assistant CSC ☐ Clerk Of Superior Court | Court Time ☐ AM ☐ PM |
|---|---|---|---|

(Over)

AOC-CR-113, Rev. 4/14
© 2014 Administrative Office of the Courts

| District Attorney | ☐ Waived ☐ Not Indigent ☐ Denied | Attorney For Defendant | | ☐ Appointed ☐ Retained | **PRIOR CONVICTIONS:** |
|---|---|---|---|---|---|

PRIOR CONVICTIONS: No./Level: ___0___ I (0) ☐ ___ II (1-4) ☐ ___ III (5+)

**RETURN OF SERVICE**

**PLEA:** ☐ guilty ☐ no contest _____
☐ guilty ☐ no contest _____ **VERDICT:** ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ guilty ☐ no contest _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty _____ ☐ guilty _____ M.CL. ☐ A1 ☐ 1 ☐ 2 ☐ 3
☐ not guilty _____

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

**JUDGMENT:** The defendant appeared in open court and freely, voluntarily and understandingly entered the above plea; on the above verdict it is **ORDERED** that the defendant: ☐ pay costs and a fine of $ _____ .
☐ be imprisoned for a term of _____ days in the custody of the ☐ sheriff. ☐ MCP. ☐ DAC.* Pretrial credit _____ days served.
☐ Work release ☐ is recommended. ☐ is not recommended. ☐ is ordered. *(use form AOC-CR-602)]*
☐ The Court finds that a ☐ longer ☐ shorter period of probation, than that which is specified in G.S. 15A-1343.2(d), is necessary.
☐ Execution of the sentence is suspended and the defendant is placed on unsupervised probation* for _____ months, subject to the following conditions: 1. commit no criminal offense in any jurisdiction. 2. possess no firearm, explosive or other deadly weapon listed in G.S. 14-269. 3. remain gainfully and suitably employed or faithfully pursue a course of study or of vocational training, that will equip the defendant for suitable employment, and abide by all rules of the institution. 4. satisfy child support and family obligations, as required by the Court. 5. pay to the Clerk the costs of court and any additional sums shown below.

| Fine | Restitution** | Attorney's Fee | Community Service Fee | Other |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

**Name(s), address(es), and amount(s) for aggrieved party(ies) to receive restitution: NOTE TO CLERK: Record SSN or Tax ID. No. of aggrieved party(ies) on AOC-CR-382, "Certification Of Identity (Victims' Restitution)/Certification Of Identity (Witness Attendance)."

**REDELIVERY/REISSUANCE**

| Date | Signature | ☐ Dep. CSC ☐ Assist. CSC ☐ CSC |
|---|---|---|

☐ The above clerk finds the following cause to set a court date more than one month from reissue.

☐ 6. complete _____ hours of community service during the first _____ days of probation, as directed by the judicial services coordinator, and pay the fee prescribed by G.S. 143B-708 within _____ days.
☐ 7. not be found in or on the premises of the complainant or _____
☐ 8. not assault, communicate with or be in the presence of the complainant or _____
☐ 9. provide a DNA sample pursuant to G.S. 15A-266.4. (AOC-CR-319)
☐ 10. Other: _____

**RETURN FOLLOWING REDELIVERY/REISSUANCE**

I certify that this Criminal Summons was received and served as follows:

| Date Received | Date Served | Time Served ☐ AM ☐ PM | Date Returned |
|---|---|---|---|

☐ By personally serving this Criminal Summons on the defendant.

☐ This Criminal Summons WAS NOT served for the following reason:

It is **ORDERED** that this: ☐ Judgment is continued upon payment of costs.
☐ case be consolidated for judgment with _____ .
☐ sentence is to run at the expiration of the sentence in _____ .

☐ **COMMITMENT:** It is **ORDERED** that the Clerk deliver two certified copies of this Judgment and Commitment to the sheriff and that the sheriff cause the defendant to be retained in custody to serve the sentence imposed or until the defendant shall have complied with the conditions of release pending appeal.

| Signature Of Officer Making Return | Name Of Officer (Type Or Print) |
|---|---|

Department Or Agency Of Officer

| Date | Name Of District Court Judge (Type Or Print) | Signature Of District Court Judge |
|---|---|---|

**APPEAL ENTRIES**

☐ The defendant, in open court, gives notice of appeal to the Superior Court.
☐ The current pretrial release order is modified as follows:

**CERTIFICATION**

I certify that this Judgment is a true and complete copy of the original which is on file in this case.

| Date | Signature Of District Court Judge |
|---|---|

| Date | Date Delivered To Sheriff | Signature | ☐ Dep. CSC ☐ Asst. CSC ☐ CSC |
|---|---|---|---|

*NOTE: If DWI, use AOC-CR-342 (active) or AOC-CR-310 (probation). If active sentence to DAC, use AOC-CR-602. If supervised probation, use AOC-CR-604.



Potential Motivation for theft
of Copyrighted Material

Dear Homeboy,

This party ended in a premeditated assault. We are asking for self reports to start, and then if any of these incidents relate or have knowledge of, please relate to the 2011 celeb party guest list.

We are requesting identification or supervision legal handling or at least identification if related with this group from this groups 2011 celeb party participation. Very serious and not safe.

Thanks for the time.

Beth Ford

9192689211

2011 PARTY

It was so severe, the consequences after the party and some of the action taken (even in entertainment) that our 501c3 would not ask for anyone to hold our work, while that was not handled. We asked Homeboy, to take self notes of their party, guest list etc.. Because it turned so problematic, we were asking that they get in legal trouble, because it was a severe level of a problem that was unsafe and caused problems.

Our 501c3 would NOT request another place to run our work, without this handled. It was very severe, and very unsafe, and had those consequences.

We are alleging that Homeboy/Homegirl Industries DID attend the celebrity party in 2011 in NC.

1. Homegirl Industries had a butt joke ""you stare at our butts""
2. Homegirl Industries had a joke about ""You need hand sanitizer"
3. Homegirl Industries had a joke about ""Mexicans give drugs to black people""
4. Homegirl Industries had a joke about ""They people below (room or bed) tell the people above them what to do, that's hood or something.
5. Homegirl Industries had a joke about ""Father Greg says he knows you are the opposite of crazy, like Daria or something
6. Homegirl Industries had a joke about ""Father Greg is in the hallway and is the supervisor, I would tell to him...""
7. Homegirl Industries had the joke ""you stare at our butts"

The party had San Quinton Guards

The party had mad good gourmet butter food.

The party had comedians

The party had Tupacs Cousin

The party had Eminem, Quinton, Angelina Jolies group, The Simpsons, Showtime

A different supervisor group, planned a crime with someone who our office paid in 2012 from that party.

AFTER the party, several of the party participants ""stuck around"" local (some harassment issues)

AFTER the party, they took one of the groups, and used them on tv (wrong and senseless) all year 2012 causing distress and a problem.

I found out the showtime girl and the radio assault they did in 2013-2014, was planned by that parties supervisor group at that time.

| G.S. 14-277.3A | § 14-277.3A. Stalking. |
|---|---|
| G.S. 14-288.4 | § 14-288.4. Disorderly conduct |

In 2011, the group Homeboy and Homegirl Industries attended a party in Raleigh NC with celebrity groups Quinton, Eminem, and several others.

In the 2011 party, 2 of the girls from Homegirl Industires were involved with a group who in 2012, used them for about 10 felonies a day very literally (they were putting their voices on tv in entertainment, but in downing and ways to put a person down)

In 2012, they had a group of girls from Homegirl Industries, stick around Raleigh NC after that party.

2011 party ""Monse"", ""Blondie"" and a ""happy hippy" female were used in 2012 in harassing way from a different supervisor from the 2011 party where homeboy and homegirl industries attended.

2012 One of the Homegirl Industries girls would paint her nails for the 2011 party UNCG story of how I painted my nails in college (harassment)

Nov 2012   from the 2011 party ""monse"" and ""happy hippy group"" they did a thing on the radio where I was ewwwed, and my mom talks like eeee on the end of words.

In 2012, Dona Diane Mayo did a threat ""You are going to get assaulted by showtime basically" and then 2013-2014 that did happen. After her threat, she implied under her breath  ""you will need to talk to Father Greg (who was at the 2011 party).   That was the second forcast to that assault. The first was a ""pinky and the brain on the table from one of the Feb/March 2012 supervisors in my house" and a news change at the start of 2012.

In 2013, I obtained injury as a direct result of that junk.  I traveled to California to

In Feb 2013, they were auditioning a Homegirl Industries from the 2011 party for an event in GA.

In the Summer 2013, Homeboy and Homegirl Industries participated in another party (the second one to the one from 2011)

In April/May 2014, they did Homeboy / Homegirl Industries in Raleigh NC again.

The summer of 2014, Homeboy and Homegirl Industries

After the summer of 2014, Homeboy and Homegirl Industries started to do our business.

In the end of 2014, one boy who identified himself as from Homeboy Industries (unsure if accurate or not) stole the windshield wipers off my car, and my car ran into a ditch.  It was the same boy who was on tv in the 2014 incident described above, so it could have been a Hollywood stunt but if their self-identification was accurate, it was a clear theft.

End of 2014, the tv inspired by Homeboy and Homegirl Industries included

1. A CSI episode on someones story who at the 2011 party, Homegirl Industires brought up often in humor
2. A TV Change about The One Homegirl Industries girl from the summer in 2013, ""wasn't going to get or win or something"" but it was a tv change, and related to that girl.

*We have 2 Copyrights*

*– Our Second Copyright*

---

**copyrightclaims@godaddy.com**　　　　　Your resolution Your resolution Discussion Notes Support Staff Response Thank...　　　Aug 10 (3 days ago)

Your resolution Your resolution Discussion Notes Support Staff Response Thank...

---

**copyrightclaims@godaddy.com**　　　　　　　　　Aug 10 (3 days ago)


to
me

Your resolution



**Discussion Notes**

**Support Staff Response**

Thank you for contacting GoDaddy's Copyright Claims Department. We are committed to assisting intellectual property owners in taking action against IP infringement.

After reviewing your submitted copyright complaint we found that one or more of the following items were not included in your complaint:

1) An electronic signature of the copyright owner or a person authorized to act on behalf of the owner of an exclusive copyright that has allegedly been infringed.

This can be an attached scan of your physical signature or as simple as typing your full name on a fresh line in your email and designating it as your electronic signature.

2) Identification of the copyrighted work claimed to have been infringed or if multiple copyrighted works at a single online site are covered by a single notification a representative list of such works on that site.

This can be a URL to the original content (if it appears online) or as basic as a description of the work, complete enough that we can identify said content on the allegedly infringing website.

3) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit Go Daddy to locate the material.

The URL to the content in question. Please do not provide just the domain name associated with the website unless the content is immediately visible from there.

4) Information reasonably sufficient to permit Go Daddy to contact the Complaining Party such as an address telephone number and if available an electronic mail address at which the Complaining Party may be contacted.

This is your contact information that will be provided to the website owner as part of the DMCA complaint.

5) A statement that the Complaining Party "has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner its agent or the law".

6) A statement that "the information in the notification is accurate and under penalty of perjury that the Complaining Party is the owner or is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed".

Please note that items 5 & 6 need to contain the exact wording that is in quotes in each description above. The wording of these two statements is legally required and we will send the claim back to you for modification if need be.

Without all of this information, we are not able to proceed with your copyright claim. Please submit this information by return email so that we can move forward with your claim.

Let us know if you have any further questions.

Kindest Regards,

Chris
Copyright Department
Go Daddy Operating Company, LLC
CopyrightClaims@GoDaddy.com

**Customer Inquiry**

We had a copyright infringement on our webpage
www.directestablishments.org established with godaddy.com in 2012. Can you guys aid? Please call or RSVP for aid. Beth Ford 9192689211

If you need further assistance with this matter, please reply to this email and reference [Incident ID: 26612644].

Regards,
Trademark & Copyright Claims

Copyright © 2015. All rights reserved.

Reply   Forward



**Beth Jones** <bugzone1@gmail.com>                 1:27 AM (0 minutes ago)

to
copyrightclaims

Answers/Responses Highlighted Below. We are retaining legal counsel and in active lawsuit for this matter.

Homeboy Industries   Copyright Infringer   <u>3235261254</u>

 <u>www.homeboyindustries.org</u>      **Global Homeboy Webpage**

is copied from

Drug Free Gang Free   Copyright Holder    <u>8885336661x4241</u>
<u>www.directestablishments.org</u>        **Product Vending Applicant Page**

We have that on the webpage. We had to file criminal charge because they followed us to a party, and was supervising one in 2011, and their group did a crime, and I think some other girl did a crime, and was like ""talk there"" and then I looked on 4/2015 and saw they like started our junk that's a copyright in 2013, after all the other junk.

Direct Establishments (501c3) has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner its agent or the law.   The information in the notification is accurate and under penalty and perjury that the Complaining Party is the owner or is authorized to act on behalf of the owner of an exclusive right that I allegedly infringed.

Beth Ford
*__Beth Ford__* - **electronic signature 8/12/15**
CEO Direct Establishments (501c3)
<u>9192689211</u>
<u>8885336661x4241</u>
<u>www.directestablishments.org</u>
moving to
<u>www.drugfreegangfree.org</u>

**On Mon, Aug 10, 2015 at 12:24 PM, <<u>copyrightclaims@godaddy.com</u>> wrote:**

Your resolution



## Discussion Notes

### Support Staff Response

Thank you for contacting GoDaddy's Copyright Claims Department. We are committed to assisting intellectual property owners in taking action against IP infringement.

After reviewing your submitted copyright complaint we found that one or more of the following items were not included in your complaint:

1) An electronic signature of the copyright owner or a person authorized to act on behalf of the owner of an exclusive copyright that has allegedly been infringed.

This can be an attached scan of your physical signature or as simple as typing your full name on a fresh line in your email and designating it as your electronic signature.

2) Identification of the copyrighted work claimed to have been infringed or if multiple copyrighted works at a single online site are covered by a single notification a representative list of such works on that site.

This can be a URL to the original content (if it appears online) or as basic as a description of the work, complete enough that we can identify said content on the allegedly infringing website.

3) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit Go Daddy to locate the material.

The URL to the content in question. Please do not provide just the domain name associated with the website unless the content is immediately visible from there.

4) Information reasonably sufficient to permit Go Daddy to contact the Complaining Party such as an address telephone number and if available an electronic mail address at which the Complaining Party may be contacted.

This is your contact information that will be provided to the website owner as part of the DMCA complaint.

5) A statement that the Complaining Party "has a good faith belief that

**use of the material in the manner complained of is not authorized by the copyright owner its agent or the law".**

6) A statement that "the information in the notification is accurate and under penalty of perjury that the Complaining Party is the owner or is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed".

Please note that items 5 & 6 need to contain the exact wording that is in quotes in each description above. The wording of these two statements is legally required and we will send the claim back to you for modification if need be.

Without all of this information, we are not able to proceed with your copyright claim. Please submit this information by return email so that we can move forward with your claim.

Let us know if you have any further questions.

Kindest Regards,

Chris
Copyright Department
Go Daddy Operating Company, LLC
CopyrightClaims@GoDaddy.com

**Customer Inquiry**

We had a copyright infringement on our webpage www.directestablishments.org  established with godaddy.com in 2012. Can you guys aid?  Please call or RSVP for aid.  Beth Ford 9192689211

If you need further assistance with this matter, please reply to this email and reference [Incident ID: 26612644].

Regards,
Trademark & Copyright Claims

Copyright © 2015. All rights reserved.

# Chapter 5

## Copyright Infringement and Remedies

SECTION                                                                  PAGE

501   *Infringement of copyright* ............................................... 158

502   *Remedies for infringement: Injunctions* ............................... 159

503   *Remedies for infringement: Impounding and
      disposition of infringing articles* ...................................... 159

504   *Remedies for infringement: Damages and profits* ..................... 160

505   *Remedies for infringement: Costs and attorney's fees* ............... 162

506   *Criminal offenses* ...................................................... 162

507   *Limitations on actions* ................................................ 163

508   *Notification of filing and determination of actions* .................. 163

509   *[Repealed]*[1] ......................................................... 164

510   *Remedies for alteration of programming by cable systems* ........... 164

511   *Liability of States, instrumentalities of States, and
      State officials for infringement of copyright* ......................... 164

512   *Limitations on liability relating to material online* ................... 165

513   *Determination of reasonable license fees
      for individual proprietors*[2] ......................................... 175

## § 501 · Infringement of copyright[3]

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

(e) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(5), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

(f)(1) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local market of that station.

(2) A television broadcast station may file a civil action against any satellite carrier that has refused to carry television broadcast signals, as required under section 122(a)(2), to enforce that television broadcast station's rights under section 338(a) of the Communications Act of 1934.

## §502 · Remedies for infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

## §503 · Remedies for infringement: Impounding and disposition of infringing articles[4]

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—

   (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;

   (B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and

   (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## §504 · Remedies for infringement: Damages and profits[5]

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-

able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U.S.C. 1127).

(d) ADDITIONAL DAMAGES IN CERTAIN CASES. — In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that

the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

## §505 · Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## §506 · Criminal offenses[6]

(a) CRIMINAL INFRINGEMENT.—

(1) IN GENERAL.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

(2) EVIDENCE.—For purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright.

(3) DEFINITION.—In this subsection, the term "work being prepared for commercial distribution" means—

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution—

(i) the copyright owner has a reasonable expectation of commercial distribution; and

(ii) the copies or phonorecords of the work have not been commercially distributed; or

(B) a motion picture, if, at the time of unauthorized distribution, the motion picture—

       (i) has been made available for viewing in a motion picture exhibition facility; and

       (ii) has not been made available in copies for sale to the general public in the United States in a format intended to permit viewing outside a motion picture exhibition facility.

  (b) Forfeiture, Destruction, and Restitution.—Forfeiture, destruction, and restitution relating to this section shall be subject to section 2323 of title 18, to the extent provided in that section, in addition to any other similar remedies provided by law.

  (c) Fraudulent Copyright Notice.—Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.

  (d) Fraudulent Removal of Copyright Notice.—Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.

  (e) False Representation.—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

  (f) Rights of Attribution and Integrity.—Nothing in this section applies to infringement of the rights conferred by section 106A(a).

## §507 · Limitations on actions[7]

  (a) Criminal Proceedings.—Except as expressly provided otherwise in this title, no criminal proceeding shall be maintained under the provisions of this title unless it is commenced within 5 years after the cause of action arose.

  (b) Civil Actions.—No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

## §508 · Notification of filing and determination of actions

  (a) Within one month after the filing of any action under this title, the clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action. If any other copyrighted work is later included in the action by amendment, answer, or other pleading, the clerk shall

also send a notification concerning it to the Register within one month after the pleading is filed.

(b) Within one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court.

(c) Upon receiving the notifications specified in this section, the Register shall make them a part of the public records of the Copyright Office.

## §509 · [Repealed][8]

## §510 · Remedies for alteration of programming by cable systems[9]

(a) In any action filed pursuant to section 111(c)(3), the following remedies shall be available:

(1) Where an action is brought by a party identified in subsections (b) or (c) of section 501, the remedies provided by sections 502 through 505, and the remedy provided by subsection (b) of this section; and

(2) When an action is brought by a party identified in subsection (d) of section 501, the remedies provided by sections 502 and 505, together with any actual damages suffered by such party as a result of the infringement, and the remedy provided by subsection (b) of this section.

(b) In any action filed pursuant to section 111(c)(3), the court may decree that, for a period not to exceed thirty days, the cable system shall be deprived of the benefit of a statutory license for one or more distant signals carried by such cable system.

## §511 · Liability of States, instrumentalities of States, and State officials for infringement of copyright[10]

(a) IN GENERAL. — Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies

of phonorecords in violation of section 602, or for any other violation under this title.

(b) REMEDIES.—In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503, actual damages and profits and statutory damages under section 504, costs and attorney's fees under section 505, and the remedies provided in section 510.

## §512 · Limitations on liability relating to material online[11]

(a) TRANSITORY DIGITAL NETWORK COMMUNICATIONS.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

(b) SYSTEM CACHING.—

(1) LIMITATION ON LIABILITY.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate

and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which—

(A) the material is made available online by a person other than the service provider;

(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

(2) CONDITIONS. — The conditions referred to in paragraph (1) are that—

(A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

(B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

(C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology—

(i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

(ii) is consistent with generally accepted industry standard communications protocols; and

(iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

(D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a

condition based on payment of a fee or provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions; and

(E) if the person described in paragraph (1)(A) makes that material available online without the authorization of the copyright owner of the material, the service provider responds expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement as described in subsection (c)(3), except that this subparagraph applies only if—

(i) the material has previously been removed from the originating site or access to it has been disabled, or a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled; and

(ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

(c) Information Residing on Systems or Networks at Direction of Users.—

(1) In general.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

(A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

(2) Designated agent.—The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described

in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

(A) the name, address, phone number, and electronic mail address of the agent.

(B) other contact information which the Register of Copyrights may deem appropriate.

The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

(3) ELEMENTS OF NOTIFICATION.—

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(B)(i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

(d) INFORMATION LOCATION TOOLS. — A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link, if the service provider —

(1) (A) does not have actual knowledge that the material or activity is infringing;

(B) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(C) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(2) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(3) upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

(e) LIMITATION ON LIABILITY OF NONPROFIT EDUCATIONAL INSTITUTIONS. — (1) When a public or other nonprofit institution of higher education is a service provider, and when a faculty member or graduate student who is an employee of such institution is performing a teaching or research function, for the purposes of subsections (a) and (b) such faculty member or graduate student shall be considered to be a person other than the institution, and for the purposes of subsections (c) and (d) such faculty member's or graduate student's knowledge or awareness of his or her infringing activities shall not be attributed to the institution, if —

(A) such faculty member's or graduate student's infringing activities do not involve the provision of online access to instructional materials that are or were required or recommended, within the preceding 3-year period,

for a course taught at the institution by such faculty member or graduate student;

(B) the institution has not, within the preceding 3-year period, received more than 2 notifications described in subsection (c)(3) of claimed infringement by such faculty member or graduate student, and such notifications of claimed infringement were not actionable under subsection (f); and

(C) the institution provides to all users of its system or network informational materials that accurately describe, and promote compliance with, the laws of the United States relating to copyright.

(2) For the purposes of this subsection, the limitations on injunctive relief contained in subsections (j)(2) and (j)(3), but not those in (j)(1), shall apply.

(f) MISREPRESENTATIONS.—Any person who knowingly materially misrepresents under this section—

(1) that material or activity is infringing, or

(2) that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

(g) REPLACEMENT OF REMOVED OR DISABLED MATERIAL AND LIMITATION ON OTHER LIABILITY.—

(1) NO LIABILITY FOR TAKING DOWN GENERALLY.—Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

(2) EXCEPTION.—Paragraph (1) shall not apply with respect to material residing at the direction of a subscriber of the service provider on a system or network controlled or operated by or for the service provider that is removed, or to which access is disabled by the service provider, pursuant to a notice provided under subsection (c)(1)(C), unless the service provider—

(A) takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;

(B) upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and

(C) replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

(3) CONTENTS OF COUNTER NOTIFICATION. — To be effective under this subsection, a counter notification must be a written communication provided to the service provider's designated agent that includes substantially the following:

(A) A physical or electronic signature of the subscriber.

(B) Identification of the material that has been removed or to which access has been disabled and the location at which the material appeared before it was removed or access to it was disabled.

(C) A statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.

(D) The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.

(4) LIMITATION ON OTHER LIABILITY. — A service provider's compliance with paragraph (2) shall not subject the service provider to liability for copyright infringement with respect to the material identified in the notice provided under subsection (c)(1)(C).

(h) SUBPOENA TO IDENTIFY INFRINGER. —

(1) REQUEST. — A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

(2) CONTENTS OF REQUEST. — The request may be made by filing with the clerk —

(A) a copy of a notification described in subsection (c)(3)(A);

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

(3) CONTENTS OF SUBPOENA.—The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

(4) BASIS FOR GRANTING SUBPOENA.—If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

(5) ACTIONS OF SERVICE PROVIDER RECEIVING SUBPOENA.—Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A), the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification.

(6) RULES APPLICABLE TO SUBPOENA.—Unless otherwise provided by this section or by applicable rules of the court, the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena *duces tecum.*

(i) CONDITIONS FOR ELIGIBILITY.—

(1) ACCOMMODATION OF TECHNOLOGY.—The limitations on liability established by this section shall apply to a service provider only if the service provider—

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

(B) accommodates and does not interfere with standard technical measures.

(2) DEFINITION.—As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and—

(A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(B) are available to any person on reasonable and nondiscriminatory terms; and

(C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

(j) INJUNCTIONS. — The following rules shall apply in the case of any application for an injunction under section 502 against a service provider that is not subject to monetary remedies under this section:

(1) SCOPE OF RELIEF. — (A) With respect to conduct other than that which qualifies for the limitation on remedies set forth in subsection (a), the court may grant injunctive relief with respect to a service provider only in one or more of the following forms:

(i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

(ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

(B) If the service provider qualifies for the limitation on remedies described in subsection (a), the court may only grant injunctive relief in one or both of the following forms:

(i) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(ii) An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

(2) CONSIDERATIONS. — The court, in considering the relevant criteria for injunctive relief under applicable law, shall consider —

(A) whether such an injunction, either alone or in combination with other such injunctions issued against the same service provider under this subsection, would significantly burden either the provider or the operation of the provider's system or network;

(B) the magnitude of the harm likely to be suffered by the copyright owner in the digital network environment if steps are not taken to prevent or restrain the infringement;

(C) whether implementation of such an injunction would be technically feasible and effective, and would not interfere with access to noninfringing material at other online locations; and

(D) whether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available.

(3) NOTICE AND EX PARTE ORDERS. — Injunctive relief under this subsection shall be available only after notice to the service provider and an opportunity for the service provider to appear are provided, except for orders ensuring the preservation of evidence or other orders having no material adverse effect on the operation of the service provider's communications network.

(k) DEFINITIONS. —

(1) SERVICE PROVIDER. — (A) As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

(B) As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

(2) MONETARY RELIEF. — As used in this section, the term "monetary relief" means damages, costs, attorneys' fees, and any other form of monetary payment.

(l) OTHER DEFENSES NOT AFFECTED. — The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense.

(m) PROTECTION OF PRIVACY. — Nothing in this section shall be construed to condition the applicability of subsections (a) through (d) on —

(1) a service provider monitoring its service or affirmatively seeking facts indicating infringing activity, except to the extent consistent with a standard technical measure complying with the provisions of subsection (i); or

(2) a service provider gaining access to, removing, or disabling access to material in cases in which such conduct is prohibited by law.

(n) CONSTRUCTION. — Subsections (a), (b), (c), and (d) describe separate and distinct functions for purposes of applying this section. Whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection.

## §513 · Determination of reasonable license fees for individual proprietors[12]

In the case of any performing rights society subject to a consent decree which provides for the determination of reasonable license rates or fees to be charged by the performing rights society, notwithstanding the provisions of that consent decree, an individual proprietor who owns or operates fewer than 7 nonpublicly traded establishments in which nondramatic musical works are performed publicly and who claims that any license agreement offered by that performing rights society is unreasonable in its license rate or fee as to that individual proprietor, shall be entitled to determination of a reasonable license rate or fee as follows:

(1) The individual proprietor may commence such proceeding for determination of a reasonable license rate or fee by filing an application in the applicable district court under paragraph (2) that a rate disagreement exists and by serving a copy of the application on the performing rights society. Such proceeding shall commence in the applicable district court within 90 days after the service of such copy, except that such 90-day requirement shall be subject to the administrative requirements of the court.

(2) The proceeding under paragraph (1) shall be held, at the individual proprietor's election, in the judicial district of the district court with jurisdiction over the applicable consent decree or in that place of holding court of a district court that is the seat of the Federal circuit (other than the Court of Appeals for the Federal Circuit) in which the proprietor's establishment is located.

(3) Such proceeding shall be held before the judge of the court with jurisdiction over the consent decree governing the performing rights society. At the discretion of the court, the proceeding shall be held before a special master or magistrate judge appointed by such judge. Should that consent decree provide for the appointment of an advisor or advisors to the court for any purpose, any such advisor shall be the special master so named by the court.

(4) In any such proceeding, the industry rate shall be presumed to have been reasonable at the time it was agreed to or determined by the court. Such presumption shall in no way affect a determination of whether the rate is being correctly applied to the individual proprietor.

(5) Pending the completion of such proceeding, the individual proprietor shall have the right to perform publicly the copyrighted musical compositions in the repertoire of the performing rights society by paying an interim license rate or fee into an interest bearing escrow account with the clerk of the court, subject to retroactive adjustment when a final rate or fee has been determined, in an amount equal to the industry rate, or, in the absence of an industry rate, the amount of the most recent license rate or fee agreed to by the parties.

(6) Any decision rendered in such proceeding by a special master or magistrate judge named under paragraph (3) shall be reviewed by the judge of

the court with jurisdiction over the consent decree governing the performing rights society. Such proceeding, including such review, shall be concluded within 6 months after its commencement.

(7) Any such final determination shall be binding only as to the individual proprietor commencing the proceeding, and shall not be applicable to any other proprietor or any other performing rights society, and the performing rights society shall be relieved of any obligation of nondiscrimination among similarly situated music users that may be imposed by the consent decree governing its operations.

(8) An individual proprietor may not bring more than one proceeding provided for in this section for the determination of a reasonable license rate or fee under any license agreement with respect to any one performing rights society.

(9) For purposes of this section, the term "industry rate" means the license fee a performing rights society has agreed to with, or which has been determined by the court for, a significant segment of the music user industry to which the individual proprietor belongs.

## Chapter 5 · Notes

1. See note 8, *infra.*

2. In 1998, two sections 512 were enacted into law. First, on October 17, 1998, the Fairness in Music Licensing Act of 1998 was enacted. This Act amended chapter 5 to add section 512 entitled "Determination of reasonable license fees for individual proprietors." Pub. L. No. 105-298, 112 Stat. 2827, 2831. Second, on October 28, 1998, the Online Copyright Infringement Liability Limitation Act was enacted. This Act amended chapter 5 to add section 512 entitled "Limitations on liability relating to material online." Pub. L. No. 105-304, 112 Stat. 2860, 2877. Consequently, in 1999, a technical correction was enacted to redesignate the section 512 that was entitled "Determination of reasonable license fees for individual proprietors" as section 513. Also, the table of sections was amended to reflect that change. Pub. L. No. 106-44, 113 Stat. 221. See also note 12, *infra.*

3. The Berne Convention Implementation Act of 1988 amended section 501(b) by striking out "sections 205(d) and 411" and inserting in lieu thereof "section 411." Pub. L. No. 100-568, 102 Stat. 2853, 2860. The Satellite Home Viewer Act of 1988 amended section 501 by adding subsection (e). Pub. L. No. 100-667, 102 Stat. 3935, 3957.

In 1990, the Copyright Remedy Clarification Act amended section 501(a) by adding the last two sentences. Pub. L. No. 101-553, 104 Stat. 2749. The Visual Artists Rights Act of 1990 also amended section 501(a) as follows: 1) by inserting "or of the author as provided in section 106A(a)" after "118" and 2) by striking out "copyright." and inserting in lieu thereof "copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a)." Pub. L. No. 101-650, 104 Stat. 5089, 5131.

In 1999, a technical correction amended the first sentence in subsection 501(a) by inserting "121" in lieu of "118." Pub. L. No. 106-44, 113 Stat. 221, 222. The Satellite Home Viewer Improvement Act of 1999 amended section 501 by adding a subsection (f) and, in subsection (e), by inserting "performance or display of a work embodied in a primary transmission" in lieu of "primary transmission embodying the performance or display of a work." Pub. L. No. 106-113, 113 Stat. 1501, app. I at 1501A-527 and 544. The Satellite Home Viewer Improvement Act of 1999 states that section 501(f) shall be effective as of July 1, 1999. Pub. L. No. 106-113, 113 Stat. 1501, app. I at 1501A-544.

The Intellectual Property and High Technology Technical Amendments Act of 2002 amended section 501(a) by substituting sections "106 through 122" for "106 through 121." Pub. L. No. 107-273, 116 Stat. 1758, 1909.

4. The Prioritizing Resources and Organization for Intellectual Property Act of 2008 amended section 503 by revising subsection (a) in its entirety. Pub. L. No. 110-403, 122 Stat. 4256, 4258. A technical correction in the Copyright Cleanup, Clarification, and Corrections Act of 2010 amended section 503(a)(1)(B) to substitute "copies or phonorecords" for "copies of phonorecords." Pub. L. No. 111-295, 124 Stat. 3180, 3181.

5. The Berne Convention Implementation Act of 1988 amended section 504(c) as follows: 1) in paragraph (1), by inserting "$500" in lieu of "$250" and by inserting "$20,000" in lieu of "$10,000" and 2) in paragraph (2), by inserting "$100,000" in lieu of "$50,000" and by inserting "$200" in lieu of "$100." Pub. L. No. 100-568, 102 Stat. 2853, 2860. The Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 amended section 504(c), in paragraph (1), by substituting "$750" for "$500" and "$30,000" for "$20,000" and, in paragraph (2), by substituting "$150,000" for "$100,000." Pub. L. No. 106-160, 113 Stat. 1774.

The Fraudulent Online Identity Sanctions Act of 2004 amended section 504(c) by adding a new subparagraph (3). Pub. L. No. 108-482, 118 Stat. 3912, 3916. The Copyright Cleanup, Clarification, and Corrections Act of 2010 amended paragraph 504(c)(2) to change the reference from "subsection (g) of section 118" to "section 118(f)." Pub. L. No. 111-295, 124 Stat. 3180, 3181.

6. The Piracy and Counterfeiting Amendments Act of 1982 amended section 506 by substituting a new subsection (a). Pub. L. No. 97-180, 96 Stat. 91, 93. The Visual Artists Rights Act of 1990 amended section 506 by adding subsection (f). Pub. L. No.101-650, 104 Stat. 5089, 5131. In 1997, the No Electronic Theft (NET) Act again amended section 506 by amending subsection (a) in its entirety. Pub. L. No. 105-147, 111 Stat. 2678. That Act also directed the United States Sentencing Commission to "ensure that the applicable guideline range for a defendant convicted of a crime against intellectual property ... is sufficiently stringent to deter such a crime" and to "ensure that the guidelines provide for consideration of the retail value and quantity of the items with respect to which the crime against intellectual property was committed." Pub. L. No. 105-147, 111 Stat. 2678, 2680. See also note 2 in Appendix H.

The Artists' Rights and Theft Prevention Act of 2005 amended subsection 506(a) in its entirety. Pub. L. No. 109-9, 119 Stat. 218, 220.

The Prioritizing Resources and Organization for Intellectual Property Act of 2008 amended section 506 by revising subsection (b) in its entirety. Pub. L. No. 110-403, 122 Stat. 4256, 4260.

7. In 1997, the No Electronic Theft (NET) Act amended section 507(a) by inserting "5" in lieu of "three." Pub. L. No. 105-147, 111 Stat. 2678.

8. The Prioritizing Resources and Organization for Intellectual Property Act of 2008 repealed section 509. Pub. L. No. 110-403, 122 Stat. 4256, 4260. In lieu of this provision, refer to section 2323, chapter 113 of title 18, *United States Code*, entitled, "Forfeiture, Destruction and Restitution." Section 2323 is included in Appendix H to this volume.

9. The Satellite Home Viewer Improvement Act of 1999 amended the heading for section 510 by substituting "programming" for "programing" and, in subsection (b), by substituting "statutory" for "compulsory." Pub. L. No. 106-113, 113 Stat. 1501, app. I at 1501A-543.

10. In 1990, the Copyright Remedy Clarification Act added section 511. Pub. L. No. 101-553, 104 Stat. 2749. In 1999, a technical correction amended subsection 511(a) by inserting "121" in lieu of "119." Pub. L. No. 106-44, 113 Stat. 221, 222. The Intellectual Property and High Technology Technical Amendments Act of 2002 amended section 511(a) by substituting sections "106 through 122" for "106 through 121." Pub. L. No. 107-273, 116 Stat. 1758, 1909.

11. In 1998, the Online Copyright Infringement Liability Limitation Act added section 512. Pub. L. No. 105-304, 112 Stat. 2860, 2877. In 1999, a technical correction deleted the heading for paragraph (2) of section 512(e), which was "Injunctions." Pub. L. No. 106-44, 113 Stat. 221, 222. The Copyright Cleanup, Clarification, and Corrections Act of 2010 amended the last sentence in paragraph 512(c)(2)(B) by deleting "in both electronic and hard copy formats" after "through the Internet." Pub. L. No. 111-295, 124 Stat. 3180, 3180.

12. The Fairness in Music Licensing Act of 1998 added section 513. Pub. L. No. 105-298, 112 Stat. 2827, 2831. This section was originally designated as section 512. However, because two sections 512 had been enacted into law in 1998, a technical amendment redesignated this as section 513. Pub. L. No. 106-44, 113 Stat. 221. See also note 2, *supra*.

area based on the most recent census data released by the United States Census Bureau shall be considered to be providing local service to such designated market area.

(C) GOOD QUALITY SATELLITE SIGNAL DEFINED. — The term "good quality satellite signal" has the meaning given such term under section 342(e)(2) of Communications Act of 1934.

## §120 · Scope of exclusive rights in architectural works[63]

(a) PICTORIAL REPRESENTATIONS PERMITTED. — The copyright in an architectural work that has been constructed does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place.

(b) ALTERATIONS TO AND DESTRUCTION OF BUILDINGS. — Notwithstanding the provisions of section 106(2), the owners of a building embodying an architectural work may, without the consent of the author or copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

## §121 · Limitations on exclusive rights:
## Reproduction for blind or other people with disabilities[64]

(a) Notwithstanding the provisions of section 106, it is not an infringement of copyright for an authorized entity to reproduce or to distribute copies or phonorecords of a previously published, nondramatic literary work if such copies or phonorecords are reproduced or distributed in specialized formats exclusively for use by blind or other persons with disabilities.

(b)(1) Copies or phonorecords to which this section applies shall —

(A) not be reproduced or distributed in a format other than a specialized format exclusively for use by blind or other persons with disabilities;

(B) bear a notice that any further reproduction or distribution in a format other than a specialized format is an infringement; and

(C) include a copyright notice identifying the copyright owner and the date of the original publication.

(2) The provisions of this subsection shall not apply to standardized, secure, or norm-referenced tests and related testing material, or to computer programs, except the portions thereof that are in conventional human language (including descriptions of pictorial works) and displayed to users in the ordinary course of using the computer programs.

(c) Notwithstanding the provisions of section 106, it is not an infringement of copyright for a publisher of print instructional materials for use in elementary or secondary schools to create and distribute to the National Instructional Materials Access Center copies of the electronic files described in sections 612(a)(23)(C), 613(a)(6), and section 674(e) of the Individuals with Disabilities Education Act that contain the contents of print instructional materials using the National Instructional Material Accessibility Standard (as defined in section 674(e)(3) of that Act), if—

(1) the inclusion of the contents of such print instructional materials is required by any State educational agency or local educational agency;

(2) the publisher had the right to publish such print instructional materials in print formats; and

(3) such copies are used solely for reproduction or distribution of the contents of such print instructional materials in specialized formats.

(d) For purposes of this section, the term—

(1) "authorized entity" means a nonprofit organization or a governmental agency that has a primary mission to provide specialized services relating to training, education, or adaptive reading or information access needs of blind or other persons with disabilities;

(2) "blind or other persons with disabilities" means individuals who are eligible or who may qualify in accordance with the Act entitled "An Act to provide books for the adult blind", approved March 3, 1931 (2 U.S.C. 135a; 46 Stat. 1487) to receive books and other publications produced in specialized formats;

(3) "print instructional materials" has the meaning given under section 674(e)(3)(C) of the Individuals with Disabilities Education Act; and

(4) "specialized formats" means—

(A) braille, audio, or digital text which is exclusively for use by blind or other persons with disabilities; and

(B) with respect to print instructional materials, includes large print formats when such materials are distributed exclusively for use by blind or other persons with disabilities.

## §122 · Limitations on exclusive rights: Secondary transmissions of local television programming by satellite[65]

(a) SECONDARY TRANSMISSIONS INTO LOCAL MARKETS.—

(1) SECONDARY TRANSMISSIONS OF TELEVISION BROADCAST STATIONS WITHIN A LOCAL MARKET.—A secondary transmission of a performance or display of a work embodied in a primary transmission of a television broadcast station into the station's local market shall be subject to statutory licensing under this section if—

## §101 · Definitions[2]

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

An "anonymous work" is a work on the copies or phonorecords of which no natural person is identified as author.

An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.[3]

"Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

The "Berne Convention" is the Convention for the Protection of Literary and Artistic Works, signed at Berne, Switzerland, on September 9, 1886, and all acts, protocols, and revisions thereto.[4]

The "best edition" of a work is the edition, published in the United States at any time before the date of deposit, that the Library of Congress determines to be most suitable for its purposes.

A person's "children" are that person's immediate offspring, whether legitimate or not, and any children legally adopted by that person.

A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.

A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.[5]

"Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

"Copyright owner", with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

A "Copyright Royalty Judge" is a Copyright Royalty Judge appointed under section 802 of this title, and includes any individual serving as an interim Copyright Royalty Judge under such section.[6]

A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a "derivative work".

A "device", "machine", or "process" is one now known or later developed.

A "digital transmission" is a transmission in whole or in part in a digital or other nonanalog format.[7]

To "display" a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially.

An "establishment" is a store, shop, or any similar place of business open to the general public for the primary purpose of selling goods or services in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.[8]

The term "financial gain" includes receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works.[9]

A work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is "fixed" for purposes of this title if a fixation of the work is being made simultaneously with its transmission.

A "food service or drinking establishment" is a restaurant, inn, bar, tavern, or any other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink, in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.[10]

The "Geneva Phonograms Convention" is the Convention for the Protection of Producers of Phonograms Against Unauthorized Duplication of Their Phonograms, concluded at Geneva, Switzerland, on October 29, 1971.[11]

The "gross square feet of space" of an establishment means the entire interior space of that establishment, and any adjoining outdoor space used to serve patrons, whether on a seasonal basis or otherwise.[12]

The terms "including" and "such as" are illustrative and not limitative.

An "international agreement" is—

(1) the Universal Copyright Convention;

(2) the Geneva Phonograms Convention;

(3) the Berne Convention;

(4) the WTO Agreement;

(5) the WIPO Copyright Treaty;[13]

(6) the WIPO Performances and Phonograms Treaty;[14] and

(7) any other copyright treaty to which the United States is a party.[15]

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

"Literary works" are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

The term "motion picture exhibition facility" means a movie theater, screening room, or other venue that is being used primarily for the exhibition of a copyrighted motion picture, if such exhibition is open to the public or is made to an assembled group of viewers outside of a normal circle of a family and its social acquaintances.[16]

"Motion pictures" are audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any.

To "perform" a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible.

A "performing rights society" is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc.[17]

"Phonorecords" are material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic

craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.[18]

For purposes of section 513, a "proprietor" is an individual, corporation, partnership, or other entity, as the case may be, that owns an establishment or a food service or drinking establishment, except that no owner or operator of a radio or television station licensed by the Federal Communications Commission, cable system or satellite carrier, cable or satellite carrier service or programmer, provider of online services or network access or the operator of facilities therefor, telecommunications company, or any other such audio or audiovisual service or programmer now known or as may be developed in the future, commercial subscription music service, or owner or operator of any other transmission service, shall under any circumstances be deemed to be a proprietor.[19]

A "pseudonymous work" is a work on the copies or phonorecords of which the author is identified under a fictitious name.

"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

To perform or display a work "publicly" means—

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

"Registration", for purposes of sections 205(c)(2), 405, 406, 410(d), 411, 412, and 506(e), means a registration of a claim in the original or the renewed and extended term of copyright.[20]

"Sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied.

"State" includes the District of Columbia and the Commonwealth of Puerto Rico, and any territories to which this title is made applicable by an Act of Congress.

A "transfer of copyright ownership" is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.

A "transmission program" is a body of material that, as an aggregate, has been produced for the sole purpose of transmission to the public in sequence and as a unit.

To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

A "treaty party" is a country or intergovernmental organization other than the United States that is a party to an international agreement.[21]

The "United States", when used in a geographical sense, comprises the several States, the District of Columbia and the Commonwealth of Puerto Rico, and the organized territories under the jurisdiction of the United States Government.

For purposes of section 411, a work is a "United States work" only if—

　　(1) in the case of a published work, the work is first published—

　　　　(A) in the United States;

　　　　(B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;

　　　　(C) simultaneously in the United States and a foreign nation that is not a treaty party; or

　　　　(D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States;

　　(2) in the case of an unpublished work, all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United States; or

　　(3) in the case of a pictorial, graphic, or sculptural work incorporated in a building or structure, the building or structure is located in the United States.[22]

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".

The author's "widow" or "widower" is the author's surviving spouse under the law of the author's domicile at the time of his or her death, whether or not the spouse has later remarried.

The "WIPO Copyright Treaty" is the WIPO Copyright Treaty concluded at Geneva, Switzerland, on December 20, 1996.[23]

The "WIPO Performances and Phonograms Treaty" is the WIPO Performances and Phonograms Treaty concluded at Geneva, Switzerland, on December 20, 1996.[24]

A "work of visual art" is—

(1) a painting, drawing, print or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or

(2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

A work of visual art does not include—

(A)(i) any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;

(ii) any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container;

(iii) any portion or part of any item described in clause (i) or (ii);

(B) any work made for hire; or

(C) any work not subject to copyright protection under this title.[25]

A "work of the United States Government" is a work prepared by an officer or employee of the United States Government as part of that person's official duties.

A "work made for hire" is—

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

In determining whether any work is eligible to be considered a work made for hire under paragraph (2), neither the amendment contained in section 1011(d) of the Intellectual Property and Communications Omnibus Reform Act of 1999, as enacted by section 1000(a)(9) of Public Law 106-113, nor the deletion of the words added by that amendment—

(A) shall be considered or otherwise given any legal significance, or

(B) shall be interpreted to indicate congressional approval or disapproval of, or acquiescence in, any judicial determination,

by the courts or the Copyright Office. Paragraph (2) shall be interpreted as if both section 2(a)(1) of the Work Made for Hire and Copyright Corrections Act of 2000 and section 1011(d) of the Intellectual Property and Communications Omnibus Reform Act of 1999, as enacted by section 1000(a)(9) of Public Law 106-113, were never enacted, and without regard to any inaction or awareness by the Congress at any time of any judicial determinations.[26]

The terms "WTO Agreement" and "WTO member country" have the meanings given those terms in paragraphs (9) and (10), respectively, of section 2 of the Uruguay Round Agreements Act.[27]

## § 102 · Subject matter of copyright: In general[28]

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(1) literary works;

(2) musical works, including any accompanying words;

(3) dramatic works, including any accompanying music;

(4) pantomimes and choreographic works;

(5) pictorial, graphic, and sculptural works;

(6) motion pictures and other audiovisual works;

(7) sound recordings; and

(8) architectural works.

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

## §103 · Subject matter of copyright: Compilations and derivative works

(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

## §104 · Subject matter of copyright: National origin[29]

(a) UNPUBLISHED WORKS. — The works specified by sections 102 and 103, while unpublished, are subject to protection under this title without regard to the nationality or domicile of the author.

(b) PUBLISHED WORKS. — The works specified by sections 102 and 103, when published, are subject to protection under this title if—

(1) on the date of first publication, one or more of the authors is a national or domiciliary of the United States, or is a national, domiciliary, or sovereign authority of a treaty party, or is a stateless person, wherever that person may be domiciled; or

(2) the work is first published in the United States or in a foreign nation that, on the date of first publication, is a treaty party; or

(3) the work is a sound recording that was first fixed in a treaty party; or

(4) the work is a pictorial, graphic, or sculptural work that is incorporated in a building or other structure, or an architectural work that is embodied in a building and the building or structure is located in the United States or a treaty party; or

(5) the work is first published by the United Nations or any of its specialized agencies, or by the Organization of American States; or

(6) the work comes within the scope of a Presidential proclamation. Whenever the President finds that a particular foreign nation extends, to works by authors who are nationals or domiciliaries of the United States or to works that are first published in the United States, copyright protection on substantially the same basis as that on which the foreign nation extends protection to works of its own nationals and domiciliaries and works first published in that nation, the President may by proclamation extend protection under this title to works of which

one or more of the authors is, on the date of first publication, a national, dom-
iciliary, or sovereign authority of that nation, or which was first published in that
nation. The President may revise, suspend, or revoke any such proclamation or
impose any conditions or limitations on protection under a proclamation.

For purposes of paragraph (2), a work that is published in the United States
or a treaty party within 30 days after publication in a foreign nation that is not a
treaty party shall be considered to be first published in the United States or such
treaty party, as the case may be.

(c) EFFECT OF BERNE CONVENTION. — No right or interest in a work eligible
for protection under this title may be claimed by virtue of, or in reliance upon, the
provisions of the Berne Convention, or the adherence of the United States thereto.
Any rights in a work eligible for protection under this title that derive from this
title, other Federal or State statutes, or the common law, shall not be expanded or
reduced by virtue of, or in reliance upon, the provisions of the Berne Convention,
or the adherence of the United States thereto.

(d) EFFECT OF PHONOGRAMS TREATIES. —Notwithstanding the provisions
of subsection (b), no works other than sound recordings shall be eligible for
protection under this title solely by virtue of the adherence of the United States
to the Geneva Phonograms Convention or the WIPO Performances and Pho-
nograms Treaty.[30]

## §104A · Copyright in restored works[31]

(a) AUTOMATIC PROTECTION AND TERM. —
    (1) TERM. —
        (A) Copyright subsists, in accordance with this section, in restored works,
    and vests automatically on the date of restoration.
        (B) Any work in which copyright is restored under this section shall
    subsist for the remainder of the term of copyright that the work would have
    otherwise been granted in the United States if the work never entered the
    public domain in the United States.
    (2) EXCEPTION. —Any work in which the copyright was ever owned or
    administered by the Alien Property Custodian and in which the restored copy-
    right would be owned by a government or instrumentality thereof, is not a
    restored work.

(b) OWNERSHIP OF RESTORED COPYRIGHT. —A restored work vests initially
in the author or initial rightholder of the work as determined by the law of the
source country of the work.

(c) FILING OF NOTICE OF INTENT TO ENFORCE RESTORED COPYRIGHT
AGAINST RELIANCE PARTIES. — On or after the date of restoration, any person
who owns a copyright in a restored work or an exclusive right therein may file

with the Copyright Office a notice of intent to enforce that person's copyright or exclusive right or may serve such a notice directly on a reliance party. Acceptance of a notice by the Copyright Office is effective as to any reliance parties but shall not create a presumption of the validity of any of the facts stated therein. Service on a reliance party is effective as to that reliance party and any other reliance parties with actual knowledge of such service and of the contents of that notice.

(d) Remedies for Infringement of Restored Copyrights.—

(1) Enforcement of copyright in restored works in the absence of a reliance party.—As against any party who is not a reliance party, the remedies provided in chapter 5 of this title shall be available on or after the date of restoration of a restored copyright with respect to an act of infringement of the restored copyright that is commenced on or after the date of restoration.

(2) Enforcement of copyright in restored works as against reliance parties.—As against a reliance party, except to the extent provided in paragraphs (3) and (4), the remedies provided in chapter 5 of this title shall be available, with respect to an act of infringement of a restored copyright, on or after the date of restoration of the restored copyright if the requirements of either of the following subparagraphs are met:

(A)(i) The owner of the restored copyright (or such owner's agent) or the owner of an exclusive right therein (or such owner's agent) files with the Copyright Office, during the 24-month period beginning on the date of restoration, a notice of intent to enforce the restored copyright; and

(ii)(I) the act of infringement commenced after the end of the 12-month period beginning on the date of publication of the notice in the Federal Register;

(II) the act of infringement commenced before the end of the 12-month period described in subclause (I) and continued after the end of that 12-month period, in which case remedies shall be available only for infringement occurring after the end of that 12-month period; or

(III) copies or phonorecords of a work in which copyright has been restored under this section are made after publication of the notice of intent in the Federal Register.

(B)(i) The owner of the restored copyright (or such owner's agent) or the owner of an exclusive right therein (or such owner's agent) serves upon a reliance party a notice of intent to enforce a restored copyright; and

(ii)(I) the act of infringement commenced after the end of the 12-month period beginning on the date the notice of intent is received;

(II) the act of infringement commenced before the end of the 12-month period described in subclause (I) and continued after the end of that 12-month period, in which case remedies shall be available

only for the infringement occurring after the end of that 12-month period; or

(III) copies or phonorecords of a work in which copyright has been restored under this section are made after receipt of the notice of intent.

In the event that notice is provided under both subparagraphs (A) and (B), the 12-month period referred to in such subparagraphs shall run from the earlier of publication or service of notice.

(3) EXISTING DERIVATIVE WORKS. —

(A) In the case of a derivative work that is based upon a restored work and is created—

(i) before the date of the enactment of the Uruguay Round Agreements Act, if the source country of the restored work is an eligible country on such date, or

(ii) before the date on which the source country of the restored work becomes an eligible country, if that country is not an eligible country on such date of enactment,

a reliance party may continue to exploit that derivative work for the duration of the restored copyright if the reliance party pays to the owner of the restored copyright reasonable compensation for conduct which would be subject to a remedy for infringement but for the provisions of this paragraph.

(B) In the absence of an agreement between the parties, the amount of such compensation shall be determined by an action in United States district court, and shall reflect any harm to the actual or potential market for or value of the restored work from the reliance party's continued exploitation of the work, as well as compensation for the relative contributions of expression of the author of the restored work and the reliance party to the derivative work.

(4) COMMENCEMENT OF INFRINGEMENT FOR RELIANCE PARTIES. — For purposes of section 412, in the case of reliance parties, infringement shall be deemed to have commenced before registration when acts which would have constituted infringement had the restored work been subject to copyright were commenced before the date of restoration.

(e) NOTICES OF INTENT TO ENFORCE A RESTORED COPYRIGHT. —

(1) NOTICES OF INTENT FILED WITH THE COPYRIGHT OFFICE. —

(A)(i) A notice of intent filed with the Copyright Office to enforce a restored copyright shall be signed by the owner of the restored copyright or the owner of an exclusive right therein, who files the notice under subsection (d)(2)(A)(i) (hereafter in this paragraph referred to as the "owner"), or by the owner's agent, shall identify the title of the restored work, and shall include an English translation of the title and any other alternative titles

known to the owner by which the restored work may be identified, and an address and telephone number at which the owner may be contacted. If the notice is signed by an agent, the agency relationship must have been constituted in a writing signed by the owner before the filing of the notice. The Copyright Office may specifically require in regulations other information to be included in the notice, but failure to provide such other information shall not invalidate the notice or be a basis for refusal to list the restored work in the Federal Register.

(ii) If a work in which copyright is restored has no formal title, it shall be described in the notice of intent in detail sufficient to identify it.

(iii) Minor errors or omissions may be corrected by further notice at any time after the notice of intent is filed. Notices of corrections for such minor errors or omissions shall be accepted after the period established in subsection (d)(2)(A)(i). Notices shall be published in the Federal Register pursuant to subparagraph (B).

(B)(i) The Register of Copyrights shall publish in the Federal Register, commencing not later than 4 months after the date of restoration for a particular nation and every 4 months thereafter for a period of 2 years, lists identifying restored works and the ownership thereof if a notice of intent to enforce a restored copyright has been filed.

(ii) Not less than 1 list containing all notices of intent to enforce shall be maintained in the Public Information Office of the Copyright Office and shall be available for public inspection and copying during regular business hours pursuant to sections 705 and 708.

(C) The Register of Copyrights is authorized to fix reasonable fees based on the costs of receipt, processing, recording, and publication of notices of intent to enforce a restored copyright and corrections thereto.

(D)(i) Not later than 90 days before the date the Agreement on Trade-Related Aspects of Intellectual Property referred to in section 101(d)(15) of the Uruguay Round Agreements Act enters into force with respect to the United States, the Copyright Office shall issue and publish in the Federal Register regulations governing the filing under this subsection of notices of intent to enforce a restored copyright.

(ii) Such regulations shall permit owners of restored copyrights to file simultaneously for registration of the restored copyright.

(2) NOTICES OF INTENT SERVED ON A RELIANCE PARTY. —

(A) Notices of intent to enforce a restored copyright may be served on a reliance party at any time after the date of restoration of the restored copyright.

(B) Notices of intent to enforce a restored copyright served on a reliance party shall be signed by the owner or the owner's agent, shall identify the restored work and the work in which the restored work is used, if any, in

detail sufficient to identify them, and shall include an English translation of the title, any other alternative titles known to the owner by which the work may be identified, the use or uses to which the owner objects, and an address and telephone number at which the reliance party may contact the owner. If the notice is signed by an agent, the agency relationship must have been constituted in writing and signed by the owner before service of the notice.

(3) EFFECT OF MATERIAL FALSE STATEMENTS.—Any material false statement knowingly made with respect to any restored copyright identified in any notice of intent shall make void all claims and assertions made with respect to such restored copyright.

(f) IMMUNITY FROM WARRANTY AND RELATED LIABILITY.—

(1) IN GENERAL.—Any person who warrants, promises, or guarantees that a work does not violate an exclusive right granted in section 106 shall not be liable for legal, equitable, arbitral, or administrative relief if the warranty, promise, or guarantee is breached by virtue of the restoration of copyright under this section, if such warranty, promise, or guarantee is made before January 1, 1995.

(2) PERFORMANCES.—No person shall be required to perform any act if such performance is made infringing by virtue of the restoration of copyright under the provisions of this section, if the obligation to perform was undertaken before January 1, 1995.

(g) PROCLAMATION OF COPYRIGHT RESTORATION.—Whenever the President finds that a particular foreign nation extends, to works by authors who are nationals or domiciliaries of the United States, restored copyright protection on substantially the same basis as provided under this section, the President may by proclamation extend restored protection provided under this section to any work—

(1) of which one or more of the authors is, on the date of first publication, a national, domiciliary, or sovereign authority of that nation; or

(2) which was first published in that nation.

The President may revise, suspend, or revoke any such proclamation or impose any conditions or limitations on protection under such a proclamation.

(h) DEFINITIONS.—For purposes of this section and section 109(a):

(1) The term "date of adherence or proclamation" means the earlier of the date on which a foreign nation which, as of the date the WTO Agreement enters into force with respect to the United States, is not a nation adhering to the Berne Convention or a WTO member country, becomes—

(A) a nation adhering to the Berne Convention;

(B) a WTO member country;

(C) a nation adhering to the WIPO Copyright Treaty;[32]

(D) a nation adhering to the WIPO Performances and Phonograms Treaty;[33] or

(E) subject to a Presidential proclamation under subsection (g).

(2) The "date of restoration" of a restored copyright is—

(A) January 1, 1996, if the source country of the restored work is a nation adhering to the Berne Convention or a WTO member country on such date, or

(B) the date of adherence or proclamation, in the case of any other source country of the restored work.

(3) The term "eligible country" means a nation, other than the United States, that—

(A) becomes a WTO member country after the date of the enactment of the Uruguay Round Agreements Act;

(B) on such date of enactment is, or after such date of enactment becomes, a nation adhering to the Berne Convention;

(C) adheres to the WIPO Copyright Treaty;[34]

(D) adheres to the WIPO Performances and Phonograms Treaty;[35] or

(E) after such date of enactment becomes subject to a proclamation under subsection (g).

(4) The term "reliance party" means any person who—

(A) with respect to a particular work, engages in acts, before the source country of that work becomes an eligible country, which would have violated section 106 if the restored work had been subject to copyright protection, and who, after the source country becomes an eligible country, continues to engage in such acts;

(B) before the source country of a particular work becomes an eligible country, makes or acquires 1 or more copies or phonorecords of that work; or

(C) as the result of the sale or other disposition of a derivative work covered under subsection (d)(3), or significant assets of a person described in subparagraph (A) or (B), is a successor, assignee, or licensee of that person.

(5) The term "restored copyright" means copyright in a restored work under this section.

(6) The term "restored work" means an original work of authorship that—

(A) is protected under subsection (a);

(B) is not in the public domain in its source country through expiration of term of protection;

(C) is in the public domain in the United States due to—

(i) noncompliance with formalities imposed at any time by United States copyright law, including failure of renewal, lack of proper notice, or failure to comply with any manufacturing requirements;

(ii) lack of subject matter protection in the case of sound recordings fixed before February 15, 1972; or

(iii) lack of national eligibility;

(D) has at least one author or rightholder who was, at the time the work was created, a national or domiciliary of an eligible country, and if published, was first published in an eligible country and not published in the United States during the 30-day period following publication in such eligible country; and

(E) if the source country for the work is an eligible country solely by virtue of its adherence to the WIPO Performances and Phonograms Treaty, is a sound recording.[36]

(7) The term "rightholder" means the person—

(A) who, with respect to a sound recording, first fixes a sound recording with authorization, or

(B) who has acquired rights from the person described in subparagraph (A) by means of any conveyance or by operation of law.

(8) The "source country" of a restored work is—

(A) a nation other than the United States;

(B) in the case of an unpublished work—

(i) the eligible country in which the author or rightholder is a national or domiciliary, or, if a restored work has more than 1 author or rightholder, of which the majority of foreign authors or rightholders are nationals or domiciliaries; or

(ii) if the majority of authors or rightholders are not foreign, the nation other than the United States which has the most significant contacts with the work; and

(C) in the case of a published work—

(i) the eligible country in which the work is first published, or

(ii) if the restored work is published on the same day in 2 or more eligible countries, the eligible country which has the most significant contacts with the work.

## §105 · Subject matter of copyright: United States Government works[37]

Copyright protection under this title is not available for any work of the United States Government, but the United States Government is not precluded from receiving and holding copyrights transferred to it by assignment, bequest, or otherwise.

## §106 · Exclusive rights in copyrighted works[38]

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

## §106A · Rights of certain authors to attribution and integrity[39]

(a) RIGHTS OF ATTRIBUTION AND INTEGRITY.—Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art—

(1) shall have the right—

(A) to claim authorship of that work, and

(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

(2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and

(3) subject to the limitations set forth in section 113(d), shall have the right—

(A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

(B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

(b) SCOPE AND EXERCISE OF RIGHTS.—Only the author of a work of visual art has the rights conferred by subsection (a) in that work, whether or not the author is the copyright owner. The authors of a joint work of visual art are coowners of the rights conferred by subsection (a) in that work.

(c) EXCEPTIONS.—(1) The modification of a work of visual art which is the result of the passage of time or the inherent nature of the materials is not a distortion, mutilation, or other modification described in subsection (a)(3)(A).

(2) The modification of a work of visual art which is the result of conservation, or of the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence.

(3) The rights described in paragraphs (1) and (2) of subsection (a) shall not apply to any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item described in subparagraph (A) or (B) of the definition of "work of visual art" in section 101, and any such reproduction, depiction, portrayal, or other use of a work is not a destruction, distortion, mutilation, or other modification described in paragraph (3) of subsection (a).

(d) DURATION OF RIGHTS.—(1) With respect to works of visual art created on or after the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, the rights conferred by subsection (a) shall endure for a term consisting of the life of the author.

(2) With respect to works of visual art created before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, but title to which has not, as of such effective date, been transferred from the author, the rights conferred by subsection (a) shall be coextensive with, and shall expire at the same time as, the rights conferred by section 106.

(3) In the case of a joint work prepared by two or more authors, the rights conferred by subsection (a) shall endure for a term consisting of the life of the last surviving author.

(4) All terms of the rights conferred by subsection (a) run to the end of the calendar year in which they would otherwise expire.

(e) TRANSFER AND WAIVER.—(1) The rights conferred by subsection (a) may not be transferred, but those rights may be waived if the author expressly agrees to such waiver in a written instrument signed by the author. Such instrument shall specifically identify the work, and uses of that work, to which the waiver applies, and the waiver shall apply only to the work and uses so identified. In the case of a joint work prepared by two or more authors, a waiver of rights under this paragraph made by one such author waives such rights for all such authors.

(2) Ownership of the rights conferred by subsection (a) with respect to a work of visual art is distinct from ownership of any copy of that work, or of a copyright or any exclusive right under a copyright in that work. Transfer of ownership of any copy of a work of visual art, or of a copyright or any exclusive right under a copyright, shall not constitute a waiver of the rights conferred by subsection (a). Except as may otherwise be agreed by the author in a written instrument signed by the author, a waiver of the rights conferred

by subsection (a) with respect to a work of visual art shall not constitute a transfer of ownership of any copy of that work, or of ownership of a copyright or of any exclusive right under a copyright in that work.

## §107 · Limitations on exclusive rights: Fair use[40]

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

## §108 · Limitations on exclusive rights: Reproduction by libraries and archives[41]

(a) Except as otherwise provided in this title and notwithstanding the provisions of section 106, it is not an infringement of copyright for a library or archives, or any of its employees acting within the scope of their employment, to reproduce no more than one copy or phonorecord of a work, except as provided in subsections (b) and (c), or to distribute such copy or phonorecord, under the conditions specified by this section, if—

(1) the reproduction or distribution is made without any purpose of direct or indirect commercial advantage;

(2) the collections of the library or archives are (i) open to the public, or (ii) available not only to researchers affiliated with the library or archives or with the institution of which it is a part, but also to other persons doing research in a specialized field; and

(3) the reproduction or distribution of the work includes a notice of copyright that appears on the copy or phonorecord that is reproduced under the

provisions of this section, or includes a legend stating that the work may be protected by copyright if no such notice can be found on the copy or phonorecord that is reproduced under the provisions of this section.

(b) The rights of reproduction and distribution under this section apply to three copies or phonorecords of an unpublished work duplicated solely for purposes of preservation and security or for deposit for research use in another library or archives of the type described by clause (2) of subsection (a), if—

(1) the copy or phonorecord reproduced is currently in the collections of the library or archives; and

(2) any such copy or phonorecord that is reproduced in digital format is not otherwise distributed in that format and is not made available to the public in that format outside the premises of the library or archives.

(c) The right of reproduction under this section applies to three copies or phonorecords of a published work duplicated solely for the purpose of replacement of a copy or phonorecord that is damaged, deteriorating, lost, or stolen, or if the existing format in which the work is stored has become obsolete, if—

(1) the library or archives has, after a reasonable effort, determined that an unused replacement cannot be obtained at a fair price; and

(2) any such copy or phonorecord that is reproduced in digital format is not made available to the public in that format outside the premises of the library or archives in lawful possession of such copy.

For purposes of this subsection, a format shall be considered obsolete if the machine or device necessary to render perceptible a work stored in that format is no longer manufactured or is no longer reasonably available in the commercial marketplace.

(d) The rights of reproduction and distribution under this section apply to a copy, made from the collection of a library or archives where the user makes his or her request or from that of another library or archives, of no more than one article or other contribution to a copyrighted collection or periodical issue, or to a copy or phonorecord of a small part of any other copyrighted work, if—

(1) the copy or phonorecord becomes the property of the user, and the library or archives has had no notice that the copy or phonorecord would be used for any purpose other than private study, scholarship, or research; and

(2) the library or archives displays prominently, at the place where orders are accepted, and includes on its order form, a warning of copyright in accordance with requirements that the Register of Copyrights shall prescribe by regulation.

(e) The rights of reproduction and distribution under this section apply to the entire work, or to a substantial part of it, made from the collection of a library or archives where the user makes his or her request or from that of another library or archives, if the library or archives has first determined, on the basis of a reasonable investigation, that a copy or phonorecord of the copyrighted work cannot be obtained at a fair price, if—

chapter the reasonable costs incurred by the Librarian of Congress, the Copyright Office, and the Copyright Royalty Judges in conducting that proceeding, other than the salaries of the Copyright Royalty Judges and the 3 staff members appointed under section 802(b).

(B) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated such sums as may be necessary to pay the costs incurred under this chapter not covered by the filing fees collected under subsection (b). All funds made available pursuant to this subparagraph shall remain available until expended.

(2) POSITIONS REQUIRED FOR ADMINISTRATION OF COMPULSORY LICENSING.—Section 307 of the Legislative Branch Appropriations Act, 1994, shall not apply to employee positions in the Library of Congress that are required to be filled in order to carry out section 111, 112, 114, 115, 116, 118, or 119 or chapter 10.

## §804 · Institution of proceedings[5]

(a) FILING OF PETITION.—With respect to proceedings referred to in paragraphs (1) and (2) of section 801(b) concerning the determination or adjustment of royalty rates as provided in sections 111, 112, 114, 115, 116, 118, 119, and 1004, during the calendar years specified in the schedule set forth in subsection (b), any owner or user of a copyrighted work whose royalty rates are specified by this title, or are established under this chapter before or after the enactment of the Copyright Royalty and Distribution Reform Act of 2004, may file a petition with the Copyright Royalty Judges declaring that the petitioner requests a determination or adjustment of the rate. The Copyright Royalty Judges shall make a determination as to whether the petitioner has such a significant interest in the royalty rate in which a determination or adjustment is requested. If the Copyright Royalty Judges determine that the petitioner has such a significant interest, the Copyright Royalty Judges shall cause notice of this determination, with the reasons for such determination, to be published in the Federal Register, together with the notice of commencement of proceedings under this chapter. With respect to proceedings under paragraph (1) of section 801(b) concerning the determination or adjustment of royalty rates as provided in sections 112 and 114, during the calendar years specified in the schedule set forth in subsection (b), the Copyright Royalty Judges shall cause notice of commencement of proceedings under this chapter to be published in the Federal Register as provided in section 803(b)(1)(A).

(b) TIMING OF PROCEEDINGS.—

(1) SECTION 111 PROCEEDINGS.—(A) A petition described in subsection (a) to initiate proceedings under section 801(b)(2) concerning the adjustment of royalty rates under section 111 to which subparagraph (A) or (D) of section

801(b)(2) applies may be filed during the year 2015 and in each subsequent fifth calendar year.

(B) In order to initiate proceedings under section 801(b)(2) concerning the adjustment of royalty rates under section 111 to which subparagraph (B) or (C) of section 801(b)(2) applies, within 12 months after an event described in either of those subsections, any owner or user of a copyrighted work whose royalty rates are specified by section 111, or by a rate established under this chapter before or after the enactment of the Copyright Royalty and Distribution Reform Act of 2004, may file a petition with the Copyright Royalty Judges declaring that the petitioner requests an adjustment of the rate. The Copyright Royalty Judges shall then proceed as set forth in subsection (a) of this section. Any change in royalty rates made under this chapter pursuant to this subparagraph may be reconsidered in the year 2015, and each fifth calendar year thereafter, in accordance with the provisions in section 801(b)(2) (B) or (C), as the case may be. A petition for adjustment of rates established by section 111(d)(1)(B) as a result of a change in the rules and regulations of the Federal Communications Commission shall set forth the change on which the petition is based.

(C) Any adjustment of royalty rates under section 111 shall take effect as of the first accounting period commencing after the publication of the determination of the Copyright Royalty Judges in the Federal Register, or on such other date as is specified in that determination.

(2) CERTAIN SECTION 112 PROCEEDINGS. —Proceedings under this chapter shall be commenced in the year 2007 to determine reasonable terms and rates of royalty payments for the activities described in section 112(e)(1) relating to the limitation on exclusive rights specified by section 114(d)(1)(C)(iv), to become effective on January 1, 2009. Such proceedings shall be repeated in each subsequent fifth calendar year.

(3) SECTION 114 AND CORRESPONDING 112 PROCEEDINGS. —

(A) FOR ELIGIBLE NONSUBSCRIPTION SERVICES AND NEW SUBSCRIPTION SERVICES. —Proceedings under this chapter shall be commenced as soon as practicable after the date of enactment of the Copyright Royalty and Distribution Reform Act of 2004 to determine reasonable terms and rates of royalty payments under sections 114 and 112 for the activities of eligible nonsubscription transmission services and new subscription services, to be effective for the period beginning on January 1, 2006, and ending on December 31, 2010. Such proceedings shall next be commenced in January 2009 to determine reasonable terms and rates of royalty payments, to become effective on January 1, 2011. Thereafter, such proceedings shall be repeated in each subsequent fifth calendar year.

(B) FOR PREEXISTING SUBSCRIPTION AND SATELLITE DIGITAL AUDIO RADIO SERVICES. — Proceedings under this chapter shall be commenced in January 2006 to determine reasonable terms and rates of royalty payments

under sections 114 and 112 for the activities of preexisting subscription services, to be effective during the period beginning on January 1, 2008, and ending on December 31, 2012, and preexisting satellite digital audio radio services, to be effective during the period beginning on January 1, 2007, and ending on December 31, 2012. Such proceedings shall next be commenced in 2011 to determine reasonable terms and rates of royalty payments, to become effective on January 1, 2013. Thereafter, such proceedings shall be repeated in each subsequent fifth calendar year.

(C)(i) Notwithstanding any other provision of this chapter, this subparagraph shall govern proceedings commenced pursuant to section 114(f)(1)(C) and 114(f)(2)(C) concerning new types of services.

(ii) Not later than 30 days after a petition to determine rates and terms for a new type of service is filed by any copyright owner of sound recordings, or such new type of service, indicating that such new type of service is or is about to become operational, the Copyright Royalty Judges shall issue a notice for a proceeding to determine rates and terms for such service.

(iii) The proceeding shall follow the schedule set forth in subsections (b), (c), and (d) of section 803, except that—

(I) the determination shall be issued by not later than 24 months after the publication of the notice under clause (ii); and

(II) the decision shall take effect as provided in subsections (c)(2) and (d)(2) of section 803 and section 114(f)(4)(B)(ii) and (C).

(iv) The rates and terms shall remain in effect for the period set forth in section 114(f)(1)(C) or 114(f)(2)(C), as the case may be.

(4) SECTION 115 PROCEEDINGS.—A petition described in subsection (a) to initiate proceedings under section 801(b)(1) concerning the adjustment or determination of royalty rates as provided in section 115 may be filed in the year 2006 and in each subsequent fifth calendar year, or at such other times as the parties have agreed under section 115(c)(3) (B) and (C).

(5) SECTION 116 PROCEEDINGS.—(A) A petition described in subsection (a) to initiate proceedings under section 801(b) concerning the determination of royalty rates and terms as provided in section 116 may be filed at any time within 1 year after negotiated licenses authorized by section 116 are terminated or expire and are not replaced by subsequent agreements.

(B) If a negotiated license authorized by section 116 is terminated or expires and is not replaced by another such license agreement which provides permission to use a quantity of musical works not substantially smaller than the quantity of such works performed on coin-operated phonorecord players during the 1-year period ending March 1, 1989, the Copyright Royalty Judges shall, upon petition filed under paragraph (1) within 1 year after such termination or expiration, commence a proceeding to promptly

establish an interim royalty rate or rates for the public performance by means of a coin-operated phonorecord player of nondramatic musical works embodied in phonorecords which had been subject to the terminated or expired negotiated license agreement. Such rate or rates shall be the same as the last such rate or rates and shall remain in force until the conclusion of proceedings by the Copyright Royalty Judges, in accordance with section 803, to adjust the royalty rates applicable to such works, or until superseded by a new negotiated license agreement, as provided in section 116(b).

(6) SECTION 118 PROCEEDINGS.—A petition described in subsection (a) to initiate proceedings under section 801(b)(1) concerning the determination of reasonable terms and rates of royalty payments as provided in section 118 may be filed in the year 2006 and in each subsequent fifth calendar year.

(7) SECTION 1004 PROCEEDINGS.—A petition described in subsection (a) to initiate proceedings under section 801(b)(1) concerning the adjustment of reasonable royalty rates under section 1004 may be filed as provided in section 1004(a)(3).

(8) PROCEEDINGS CONCERNING DISTRIBUTION OF ROYALTY FEES.—With respect to proceedings under section 801(b)(3) concerning the distribution of royalty fees in certain circumstances under section 111, 119, or 1007, the Copyright Royalty Judges shall, upon a determination that a controversy exists concerning such distribution, cause to be published in the Federal Register notice of commencement of proceedings under this chapter.

## §805 · General rule for voluntarily negotiated agreements

Any rates or terms under this title that—

(1) are agreed to by participants to a proceeding under section 803(b)(3),

(2) are adopted by the Copyright Royalty Judges as part of a determination under this chapter, and

(3) are in effect for a period shorter than would otherwise apply under a determination pursuant to this chapter,

shall remain in effect for such period of time as would otherwise apply under such determination, except that the Copyright Royalty Judges shall adjust the rates pursuant to the voluntary negotiations to reflect national monetary inflation during the additional period the rates remain in effect.